*In re* MARRIAGE OF ROBERT W. HUMPHREY, Petitioner-Appellant and Cross-Appellee, and MARION D. HUMPHREY, Respondent-Appellee and Cross-Appellant.

Third District  No. 80-652

Opinion filed November 17, 1981.

Anthony C. Raccuglia & Associates, of Peru, for appellant.

Louis E. Olivero, of Peru, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

After a union spanning several decades, the marriage of Robert W. Humphrey and Marion D. Humphrey was dissolved on December 4, 1979, by the Circuit Court of La Salle County. Thereafter, on July 10, 1980, the same court entered findings and ordered the disposition of the marital property of the parties. It is the trial court's property disposition which is the subject of this appeal by the petitioner, Mr. Humphrey, and a cross-appeal by the respondent, Mrs. Humphrey.

Mr. and Mrs. Humphrey were married on May 24, 1942. Seven years later, the Humphreys moved to a 171-acre farm in Clarion Township of Bureau County. The 171-acre farm was owned by Mrs. Humphrey's parents, and the Humphreys began their association with the Clarion Township farmland as tenants. The status changed some 10 years later when, upon the death of Mrs. Humphrey's father, she inherited 121 of the 171 acres. Another ownership change was effected in 1962 when Mrs. Humphrey inherited the remainder of the farm with her mother's passing.

During the years between 1949 and 1976, the Humphreys farmed the 171 acres either as tenants or as owners, and they both contributed to the enterprise. Mr. Humphrey was primarily the one whose labors operated the farm, but Mrs. Humphrey assisted her husband in planting, fertilizing, trucking and various other duties.

Mr. Humphrey's physical condition caused the couple to re-evaluate their situation in 1976. Arthritis, ulcers, hypertension and high blood pressure made farm work difficult for Mr. Humphrey, and in consequence, a decision was made to sell the 171 acres. With the recommendation of their banker, the Humphreys consulted an attorney in Sterling, Illinois, regarding the sale of the farm and the tax consequences thereof. The attorney discussed various concepts with the Humphreys, including gifts between spouses to effect estate and inheritance tax savings as well as installment selling utilizing contracts for deeds. Both of these techniques were em-

ployed by the couple, and as will soon be apparent, the former technique, gifts among spouses, has provided the tinder which fires this appeal.

Having made the decision to sell the farmstead, the Humphreys proceeded to dispose of the asset in four transactions to three buyers. On December 21, 1976, the Humphreys entered into a contract for deed to sell 51 acres to Kenneth Alshouse. Then, on December 29, 1976, the couple entered into a contract for deed to sell 81 acres to Wilbur Stamberger. Finally, on February 4, 1977, they sold 4 acres to Gerald Eich in a cash transaction, and on the same date they sold the remaining 36 acres to the same party with a contract for deed. In each instance, the contracts provided for payments of principal and interest through the year 1982.

At the same time, the Humphreys were heeding the advice of their attorney. On December 29, 1976, Mrs. Humphrey deeded to Mr. Humphrey the north 22 acres of the total 40 acres sold to Eich the following year. In a similar fashion, on October 7, 1977, Mrs. Humphrey deeded to Mr. Humphrey an individual one-half interest in the 81 acres previously sold on contract to Stamberger. On the same date, she assigned to her husband one-half of her interest in the Stamberger contract. Gift tax returns were prepared, and a gift tax was paid in regard to the deeds and assignment.

In its order, the trial court determined that a valid gift was intended and made with the transfers between the then spouses. Having made that finding, the court divided the various parcels of real estate in the following manner: First, the 51 acres which was the subject of the Alshouse contract was determined to be nonmarital as to its value on the date it was inherited by Mrs. Humphrey, and that property's increase in value since the date of inheritance was determined to be marital, with Mrs. Humphrey being awarded 70 percent of the increase and Mr. Humphrey being awarded 30 percent of the same amount. Second, the 81 acres which was the subject of the Stamberger contract was determined to be the marital property of the parties, and Mrs. Humphrey was awarded 70 percent of its value while Mr. Humphrey was awarded 30 percent of its value. Third, the 22 acres deeded to Mr. Humphrey as carved from the 40 acres which was the subject of the two Eich transactions was determined to be the marital property of the parties, and its value was divided equally between them. Finally, 14 acres remaining of the 40 acres described in the two Eich transactions was determined to be nonmarital as to its value on the date it was inherited by Mrs. Humphrey, and that tract's increase in value since the date of inheritance was determined to be marital, with Mrs. Humphrey being awarded 70 percent of the increase and Mr. Humphrey 30 percent of that amount.

Situated on the 4-acre parcel deeded to Eich in 1977 was the residence occupied until that time by the parties. According to the trial court's order the proceeds from the sale of the 4-acre homestead were

applied, with other joint funds, to the purchase of a new residence titled in joint tenancy and located in Mendota, Illinois. The Mendota home was determined to be marital property and each party was awarded an equal interest therein. As noted at the outset, both parties urge that differing portions of the trial court's order were incorrect and should be reversed. In considering the merits of the issues raised by both parties, we are aided by several recent decisions of our supreme court which post-date the trial court's original order.

■■■ We believe the trial court's disposition of the Alshouse 51 acres, or more precisely the proceeds from the Alshouse contract, must be reversed and remanded for further consideration. Since the Alshouse acres were acquired solely by Mrs. Humphrey by devise subsequent to the marriage, our decision with regard to this asset is governed by the recent supreme court decision. (*In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305.) Therein, it was determined that the character of nonmarital property remains unchanged when it appreciates in value during the course of the marriage due solely to inflationary factors. The evidence gleaned from the transcript of proceedings in the circuit court indicates that the 51 acres in question appreciated by an amount in excess of $130,000 from the time it was acquired through inheritance by Mrs. Humphrey until the date of the contract for deed. There is evidence that some of this increase may have resulted from noninflationary factors. Indeed, Mrs. Humphrey conceded that her husband's labors had contributed to the appreciation in value realized. Mr. Humphrey buttressed that testimony with his own recollections of tiling the fields; dragging, cleaning and improving ditches; pouring a new concrete feed floor; drilling a new water well; building, repairing and improving corn cribs; and repairing, replacing and cleaning fence lines. The only evidence presented as to the value of these improvements affecting the entire farm, not simply the 51 acres, was testimony that the initial cost totaled slightly less than $16,000. While the *Komnick* case and the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1)) allow that a spouse's contribution to the appreciation of nonmarital property is to be accounted for in the division of that property, we conclude that the evidence in the record before us which monetizes the value of Mr. Humphrey's contribution to the appreciation of the entire farmstead fails to warrant his award of 30 percent of the appreciation in value of this 51-acre portion. For that reason, we believe the trial court must reconsider its decision as it affects this asset.

■■■ Our decision with regard to the Stamberger 81 acres is governed by three recent decisions of the supreme court. (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 633; *In re Marriage of Emken* (1981), 86 Ill. 2d 164; *In re Marriage of Smith* (1981), 86 Ill. 2d 518.) Therein, it was

determined "whether non-marital property, title to which [was] originally held in the name of one spouse, becomes marital property if that spouse transfer[ed] title to joint ownership." (*Smith,* at 528.) In each of the three cases, *Rogers, Emken* and *Smith,* it was held that nonmarital property so transferred will be presumed in fact as marital property. Where one person obtains by conveyance an undivided share of a parcel of real estate, he becomes a tenant in common with the remaining owner or owners (*Pure Oil Co. v. Byrnes* (1944), 388 Ill. 26, 57 N.E.2d 356), and as such he jointly owns the entire parcel, a concept described by the courts as unity of possession. (*Douds v. Fresen* (1946), 392 Ill. 477, 64 N.E.2d 729.) The facts of the instant case are of this pattern. Mrs. Humphrey conveyed to her husband an undivided one-half interest in the 81 acres and assigned to him an undivided one-half interest in the proceeds of the Stamberger contract. Thus they stood as tenants in common, or joint owners, of the asset. It follows that the trial court correctly presumed that this asset was wholly marital property and subject to equitable division between the spouses. (*Rogers; Emken; Smith.*) Since it is proper to consider the contribution of each spouse in the acquisition of marital property (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1)), and since this asset was substantially acquired with the contribution of Mrs. Humphrey's nonmarital property, we conclude that the trial court did not abuse its discretion in awarding 70 percent of its value to Mrs. Humphrey and 30 percent of its value to Mr. Humphrey. Considerable disagreement among the appellate courts existed on this issue prior to the definitive decisions in *Rogers, Emken* and *Smith,* as evidenced by the dozen conflicting cases enumerated by Justice Clark in the *Rogers* decision. Nevertheless, the weight of those cases' authority, many of which were cited in the briefs before us, must yield to the high court's recent decisions.

■■ It is correct that this presumption in fact can be rebutted by "convincing * * * evidence." (*Rogers,* 85 Ill. 2d 217, 220, 422 N.E.2d 633, 638.) Mrs. Humphrey would have us find that such evidence was presented here, where, according to her testimony, the sole motivation for the transfer to multiple tenancy was tax minimization. There was counterbalancing testimony presented that Mr. Humphrey was a hard-working farmer and a good provider for nearly 30 years, that the farm was considered to be a joint asset during that time, and that the conveyances were an attempt to accomplish legally the ownership relation which was "morally" contemplated by the spouses. In light of this conflicting testimony we do not believe the trial court erred in its determination that convincing evidence sufficient to rebut the presumption in fact was absent from the record. Consequently, we affirm the trial court's disposition of the Stamberger asset.

■■ The two transactions with Eich purported to involve 4 acres and 36

acres respectively. The trial court's order divides the 36 acres according to two schemes, the 22 acres conveyed to Mr. Humphrey by one formula and the remaining 14 acres by another. Yet, the same order declares that the 4 acres deeded outright to Eich was included in the 22-acre tract. If this finding is correct, then Mr. Humphrey was deeded only 18 of the acres which were the subject of the Eich contract for deed, and Mrs. Humphrey retained 18, not 14, of those contract acres. That being the case, the trial court order is incomplete inasmuch as it fails to make disposition of 4 of the acres which were the subject of the Eich contract. Rather than speculate on the proper resolution of this apparent ambiguity, we deem it prudent to remand the question of the disposition of this asset to the trial court where further evidence may, as necessary, be elicited. In reviewing its previous disposition of this asset, and by way of guidance to the lower court, we note that the presumption applicable to jointly owned property does not "change the law regarding interspousal transfers of property owned individually." (*Rogers*, 85 Ill. 2d 217, 220, 422 N.E.2d 633, 638.) Further, and also by way of guidance, our prior observations concerning the sharing in the appreciation of nonmarital property would be equally applicable to the 14 or 18 acres of property retained by Mrs. Humphrey.

■■ The proceeds from the sale of the 4-acre homestead, be they the nonmarital property of Mrs. Humphrey, or, because of the 22-acre conveyance, the nonmarital property of Mr. Humphrey, were the consideration in part of the purchase of a jointly owned asset, the Mendota residence. Applying the rule of *Rogers*, *Emken* and *Smith*, that jointly owned asset would be presumed in fact as marital property. We therefore find no error in the lower court order which so held and which divided that asset equally between the parties.

■■ Finally, during the pendency of this litigation, proceeds from the various contracts for deed were placed in an escrow account to permit the court to determine an appropriate disposition before the funds were dissipated. The lower court ordered that those funds should be divided in the same manner as the properties and the contracts from which said funds originated. Property acquired in exchange for nonmarital property retains its nonmarital character (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(2)), and all other property is presumed to be marital property (Ill. Rev. Stat. 1979, ch. 40, par. 503(b)). The funds in the escrow account represent property acquired in exchange for nonmarital and marital property, and we conclude that the trial court's division of those funds in the same manner should be affirmed, subject, however, to any modifications made to that method of division ordered upon remand.

For the reasons hereinbefore set forth, and with reliance of the au-

thorities cited, the decision of the Circuit Court of La Salle County is affirmed in part, reversed in part, and remanded for further proceedings.

Affirmed in part; reversed in part; remanded.

HEIPLE and STOUDER, JJ., concur.