*In re* MARRIAGE OF JOAN BENTIVENGA, Petitioner and Counterrespondent-Appellant, and VINCENT BENTIVENGA, JR., Respondent and Counterpetitioner-Appellee.

Second District   No. 81—673

Opinion filed September 16, 1982.

J. Scott Bonner, of Neumark and Bonner, and Arthur M. Berman, of Kirsh and Berman, Ltd., both of Chicago, for appellant.

William D. Serpico and David M. Zerante, both of Serpico, Novelle, Dvorak and Navigato, of Chicago, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Joan Bentivenga appeals from a judgment dissolving her marriage to Vincent Bentivenga, Jr. She challenges the classification and distri-

bution of property, the award of attorney's fees, denial of maintenance, and denial of support for a child who would be living at home while attending college.

The parties were married January 28, 1961. They have two children, Mark (age 20 at the time of trial) and Scott (age 19 at the time of trial).

The husband, an attorney, began work as an Assistant State's Attorney in Cook County shortly after the marriage. He held the position for 12 years, after which he worked for the Cook County Sheriff's Office for five years. He was elected a Circuit Court Judge of Cook County in 1976 and occupied that position at the time of trial. At the time of trial he was 44 years old and in good health. His annual gross salary was $42,500 in 1977 and 1978, and $50,500 in 1979 and 1980; his take-home pay at the time of trial was $2,445 per month.

The wife worked as a secretary for a real estate appraiser before the marriage and for about seven months thereafter. In 1975 she started working part-time as a legal secretary, becoming a full-time legal secretary about three months before the trial. She has some college credits but no degree. Her 1980 earned income was $9,966.92, and her estimated gross income for 1981 was $14,000. She was 45 and in good health at the time of trial. During the marriage she was primarily responsible for doing household chores and taking care of the children.

The parties disagreed over the extent to which the wife and her now-deceased father helped the husband obtain his job as Assistant State's Attorney, the extent of her assistance with his campaign for the bench, and the amount of time they spent entertaining "business guests" at home.

The marital home was purchased in August 1968 at a price of $45,000. The husband made a downpayment of $15,000 from his own funds and obtained loans of $15,000 each from his aunt and father; the loans were combined into one mortgage instrument. At the time of trial, $9,600 remained due on the amount owing to his aunt; after he made one or two monthly payments of $103 to his father, they agreed that rather than repay the remainder the husband would deposit the money into a savings account to finance his children's education.

At the time of trial, the wife and the two children lived in the family home; the husband had been living in a rented condominium since late 1980.

The wife inherited $13,000 from her father during the marriage.

She gave $8,000 to her husband, who deposited the money into a savings account, and spent the rest on furniture and household improvements.

At the time of trial Mark was attending Loyola University in Chicago and living at home with the wife. Scott graduated from high school in June 1981 and attends Notre Dame University.

The wife filed her petition for dissolution, and the husband counterpetitioned for dissolution. A judgment for dissolution was entered August 4, 1981.

## I. Property Division

The trial court divided the property:

|  | Wife | Husband |
|---|---|---|
| **A. Marital property** | | |
| Savings Accounts (six) * | $ 30,125 | $ 30,125 |
| Automobiles | 500 | 4,000 |
| Marital home (valued by the court at $120,000, less $9,600 mortgage - proceeds to Wife 70%) | 77,280 | 33,120 |
| Furniture | 18,000 | ——— |
| Pension Funds (Cook County, State of Illinois) | | 68,028 |
| | $125,905 | $135,273 |

\* ($13,977 in other savings accounts were set aside for children's college education - any unused funds, 75% to Husband, 25% to Wife.)

| **B. Nonmarital property** | | |
|---|---|---|
| Savings Account at Harris Trust | --- | $ 5,000 |
| 1st Federal Savings Account | --- | 25,719 |
| | $ 0 | $ 30,719 |

The wife contends that the marital home and the furniture are overvalued, and that she receives $112,905 as against the husband's $135,273. She argues that her share is insufficient for her future financial needs, and awarding her less than one-half of the marital property is inequitable because of her relatively low earning potential and opportunity for acquisition of capital assets, considering the length of the marriage and her contribution as a homemaker.

The trial court has broad discretion under the statute (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) to apportion marital property in "just proportions." (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37.) An abuse of discretion occurs only when no reasonable man would take the view adopted by the trial court. *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127.

■ We find no abuse of discretion here. While the award does not appear generous, the decision is justified under the statute in view of the husband's greater contribution to the marital estate, the wife's greater share of property immediately capable of producing income, and the substantial value of the property awarded to the wife. By her own calculation the wife received $112,905 worth of marital property, or 42% of the total, contrasted with the husband's 53%. By the court's calculation she received 46%, her husband 49%.[1] Most of this property is in the form of cash, and invested at a return reflecting the fair earning power of money (see *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 1130) would produce over $10,000 per year, which, combined with the wife's gross salary of $14,000 per year, would give her a gross annual income of over $24,000. This does not appear plainly inadequate for her support.

Concluding that the husband deserved a greater share of the marital property because of his greater contribution towards its acquisition, the court could properly take into account that all of the interest in the pension fund resulted from the husband's salaries, the savings accounts were built up largely through his earnings, and he made a down payment of $15,000 on the marital home from nonmarital funds. While the wife contributed a part of her inheritance to the marriage, substantially contributed as a homemaker, contributed to the extent to which she advanced the husband's career, which was disputed, and contributed the earnings from her employment, the court could properly conclude that the husband's contribution was greater and that this justified his greater share in the distribution.

The wife places considerable reliance on *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858. There the court reversed an even split of the proceeds from the sale of the marital home with a net worth of $55,000-$70,000, where the husband had been earning $50,000 a year before his voluntary retirement and later $200 a day, whereas the wife had earned little money during the marriage, and had little more than a high school education. *Smith* is distinguishable in that the wife there received far less marital property in absolute terms than here

---

[1]The other 5% is the $13,977 set aside for the children's college education.

and had less earning potential and, furthermore, there was apparently no great disparity in the parties' contributions to the marital property which consisted primarily of the home. While each case must rest on its facts, there is no requirement that the property distribution be even, where one of the spouses contributes a greater amount to the marital assets. *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 1130; *In re Marriage of Woodward* (1980), 83 Ill. App. 3d 253; *In re Marriage of Borg* (1981), 96 Ill. App. 3d 282; *In re Marriage of Swanson* (1981), 100 Ill. App. 3d 824.

## II.   Interest on Nonmarital Property

■■ The wife next argues that the classification of the interest on the husband's nonmarital First Federal of Chicago savings account amounting to $7,801 as nonmarital property was in error. We agree. We conclude that interest earned during the marriage on a spouse's nonmarital savings account is marital property. The intent of the Marriage and Dissolution of Marriage Act is to classify income from property acquired before the marriage as marital property. (Ill. Ann. Stat., ch. 40, pars. 503(a)(5), (a)(6), Historical and Practice Notes, at 462-63 (Smith-Hurd 1980); *In re Marriage of Reed* (1981), 100 Ill. App. 3d 873, 877.) Under the circumstances there should be an equal distribution. The wife would then be credited with an additional $3,900.50 for interest earned during the marriage from the nonmarital account.

## III.   Maintenance

■■ The wife next argues that the trial court erred in refusing to require the husband to pay her maintenance. Section 504 of the Marriage and Dissolution of Marriage Act provides, as material, that if the spouse lacks sufficient property to provide for reasonable needs, is unable to support himself through appropriate employment or is otherwise without sufficient income, maintenance may be awarded. (Ill. Rev. Stat. 1979, ch. 40, pars. 504(a)(1), (2) and (3).) The necessity for maintenance is a decision within the sound discretion of the trial court which will not be reversed unless contrary to the manifest weight of the evidence. (*In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 59.) As we have noted, it is reasonable to assume an annual gross income of $24,000 for the wife. We thus conclude that the denial of maintenance was not an abuse of discretion in the light of the wife's fairly substantial anticipated gross income. *In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, relied on by the wife, is distinguishable. In *Brenner*, the wife received an insubstantial amount of income producing marital property, virtually her sole source of income was her job

which provided an inadequate amount per month. Similarly in *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, the wife received relatively little income producing property, was not employed at the time of the trial and had last worked part-time at $2.50 per hour. In a case somewhat similar to this on the facts, *In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 577, the court upheld the denial of maintenance to a wife who earned $17,500 per year, had $1,700 in a savings account and had been self-supporting since the parties' separation. Overall, the denial of maintenance in this case was not shown to be an abuse of discretion.

### IV. Child Support

The wife argues that the trial court abused its discretion in not ordering the husband to provide her with child support to cover Mark's living expenses for the time he will be living at home in Chicago while attending college in that city.

The record is not absolutely clear as to the scope of the trial court's order insofar as payment for college expenses is concerned. The original explanation of the judgment by the trial court does not define "college education" nor does the decree itself. The decree does deny the wife's request for support for the children during their college education; in her petition for reconsideration she maintained that the decree does not provide for Mark's living expenses while he attends college.

The decision to award money for the education of a child attending college is within the trial court's discretion and for abuse to be found the record must indicate that the financial resources of both parents, the standard of living during the marriage, and the child's financial resources were such as to require a party to provide the education. (*In re Marriage of Gardner* (1980), 85 Ill. App. 3d 1004, 1006.) However, we are not sure from the record how the court ruled on the wife's petition for reconsideration in which she contended that the decree did not provide for Mark's living expenses while he was attending college. While the court denied the petition, it may well have been on the basis that the decree took this into account as college expenses and that child support as such was denied.

■ The other child is living away at college and his living expenses are paid under the decree. Whether the obligation on the part of the husband "to pay all expenses incident to said college education" entitles the wife to reimbursement for the educational expenses of Mark while he is living at home and going to school in Chicago is not clear. As a matter of fairness, it would appear that the fact that

Mark chose a probably less expensive way to go to school should require that some reimbursement be made for the expense of his living at home. In *In re Marriage of Pauley* (1982), 104 Ill. App. 3d 100, the trial court ordered the husband to pay for the college expenses of two children, one of whom was living at home while attending college. The court noted that the mother was entitled to reimbursement for the educational expenses of her children and held that these expenses included reasonable living expenses for both children. We therefore remand this question to the trial court since the record contains insufficient evidence of Mark's living expenses.

## V. Pension

The wife argues that the trial court's evaluation of the husband's interest in his pension funds (Illinois Judges Retirement System (IJRS) and the Cook County pension fund (CCF)) was against the manifest weight of the evidence. The basis of the dispute is the testimony of the wife's expert witness Arthur Tepfer, who testified that the husband could substantially increase the present value of his interest in the IJRS by transferring his years of service under the CCF.

Tepfer testified that although the present value of the husband's interest in the CCF was $26,357 and that of the interest in the IJRS was $41,671, the husband could raise the latter's value to $88,641 by withdrawing $16,904 from the CCF and transferring it to the IJRS. Tepfer stated that he relied on the provisions of the Judges Retirement System (Ill. Rev. Stat. 1979, ch. 108½, par. 18—101 *et seq.*), and the Retirement Systems Reciprocal Act (Ill. Rev. Stat. 1979, ch. 108½, par. 20—101 *et seq.*)

Tepfer did not specify the particular provision he relied upon to value the conversion option. While section 20—122.1 of the Reciprocal Act formerly provided for a conversion option similar to the one described by Tepfer (see Ill. Rev. Stat. 1973, ch. 108½, par. 20—121), this was amended in 1975 by Public Act 79—782 (1975 Ill. Laws 2434—36), effective September 5, 1975, and nothing else now in the Retirement Systems Reciprocal Act contains a similar provision. (Ill. Rev. Stat. 1979, ch. 108½, par. 20—101 *et seq.*) The present act provides for the continuity and preservation of pension credits between specified pension plans (par. 20—101), generally provides a scheme for continuing the adjusted time credits under the various plans, effective on retirement (par. 20—117), and provides for the nonduplication of pension credits (par. 20—120). Thus, a judge upon retirement receives no more than the 85% that he is entitled to under the IJRS (par. 20—124), with a refund of contribution to another fund whose credits are

not used (par. 20—120). We find no basis for raising the present value of the IJRS pension by reference to so-called conversion rights.

■ Here, the trial court properly accepted the testimony as to the present value of the CCF and the IJRS, and properly rejected the calculation of conversion factors which were without proper foundation.

## VI.  Attorney fees

The wife argues that the trial court abused its discretion in not requiring the husband to contribute more than $5,000 towards her attorney fees and costs in addition to the $500 he had already paid. She argues that the award leaves her with an outstanding obligation of about $5,600, and that the husband's greater ability to pay requires that he pay a larger share of her fees and costs.

An award of attorney fees is justified where the spouse seeking relief demonstrates financial inability to pay and the ability of the other spouse to do so. Financial inability exists where payment would strip the person of the means of her support and undermine her economic stability. The trial court's decision with regard to attorney fees will not be disturbed absent a clear abuse of discretion. *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 152.

■ The wife's assets are substantial, and it does not appear that requiring her to pay her outstanding obligations will strip her of her means of support or undermine her economic stability. *In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, relied on by the wife, is inapposite as the wife there received relatively little marital support and the husband was originally ordered to pay only $500 of her $6,627.50 in fees and costs. Here the parties' incomes are substantially unequal, but the wife has received more marital property capable of producing income in the near future. The husband was required to pay a substantial part of the wife's fees, and the trial court decision is not an abuse of discretion. See *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 618-19.

We therefore affirm the judgment in respect to the apportionment of the property, denial of maintenance, award of attorney fees and the valuation of the pension funds. We reverse the judgment insofar as it classified the interest on the nonmarital savings account as nonmarital property. The cause is remanded to the trial court to credit one-half of the interest on the nonmarital savings account in the First Federal Savings and Loan of Chicago to the wife. Insofar as the wife claims that the trial court erred in not ordering the husband to provide her with child support to cover Mark's living expenses for the

time he will be living at home while attending college we affirm the trial court; however, as the record is not clear as to the portion of the amount requested which is incident to the college education provisions in the decree, we remand this question to the trial court with directions to determine the issue in accordance with this opinion.

Affirmed in part, reversed in part and remanded.

NASH and HOPF, JJ., concur.