*In re* MARRIAGE OF TIMOTHY PIERRE FLEMMING, Petitioner and Counterrespondent-Appellee, and PAULA WRENN FLEMMING, Respondent and Counterpetitioner-Appellant.

Third District   No. 3—85—0448

Opinion filed May 16, 1986.

Samuel S. McHard, Robert J. Block, and Stuart Lefstein, all of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellant.

John W. Robertson and Dee A. Runnels, both of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The parties to this appeal were married in 1965 and, 20 years later, the marriage was dissolved in 1985 by the circuit court of Rock Island County. The action below was brought as the second half of a bifurcated dissolution of marriage proceeding. The trial court entered an order and certain post-trial orders from which appeal is taken on the issues of classification and division of property, maintenance, child support and attorney fees.

On appeal the respondent contends that the trial court committed an abuse of discretion. In order to better address the narrow issues of law in this appeal, only those facts necessary to our decision will be set forth.

The following facts are pertinent. In 1966, the Flemmings moved to Illinois and Tim began working for John Deere and Company. From 1966 to 1967, Paula taught fourth grade at a public school in Moline. Paula has a Bachelor of Arts degree in education. In 1967, she quit to

become a full-time wife and mother. In addition to her one year of teaching experience, Paula has 12 years of experience as a part-time travel agent. Three children were born to the marriage, two of whom were minors at the time of dissolution.

In 1977, Tim and his sister each received a one-fourth interest in a Moline home. On his mother's death in 1978, they each inherited an additional one-fourth interest. Tim also inherited roughly $57,000 in cash as well as stocks and securities worth over $35,000. Utilizing $45,000 of the $60,000 the parties realized on the sale of their previous marital home, they purchased Tim's sister's one-half interest in what would become their primary marital residence. In return, Tim's sister conveyed her one-half interest to Tim and Paula in joint tenancy. Tim then conveyed the entire property to himself and Paula in joint tenancy.

One year later, the parties acquired a condominium in Scottsdale, Arizona, as a vacation/retirement investment. Title to the condominium was placed in joint tenancy. Approximately $68,000 of Tim's inheritance was used to purchase the property. A mortgage was taken on the property and paid in part by marital funds and in part by the application of Tim's inherited money.

Tim has been employed at John Deere and Company as manager of the product engineering service since 1970. His gross income in the three years prior to the dissolution averaged about $60,000 per year. Tim receives about $6,000 a year in dividend income. At the time of trial, Tim also had certain pension entitlements.

In May of 1984, the parties agreed to a separation. Paula moved to Arizona to live with her mother and later a friend. She is currently employed in a stationery store in Scottsdale earning about $8,000 a year.

■ Paula'a first assertion is that the trial court abused its discretion in awarding marital and nonmarital assets. Paula claims three errors in the award of the parties' marital and nonmarital property. First, she argues that Tim waived his right to claim nonmarital property by failing to raise this claim in the pleadings. Second, she asserts that the court erred in reimbursing Tim for his nonmarital contributions to three marital assets: the marital residence, the Scottsdale condominium and a joint account at John Deere Credit Union. Third, she claims that the trial court erred in reserving jurisdiction over the division of Tim's pension.

Initially, we note that by requesting the trial court to identify and divide the parties' marital property, the petitioner asserted his right to claim nonmarital property.

■ Under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act, a trial court is directed to divide marital property upon dissolution of the marriage in "just proportions considering all relevant factors." (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) The Act does not mandate an equal division of the marital property. So long as the trial court has considered all the factors enumerated in section 503 of the Act, its discretion will only be reversed where no reasonable person would take the view adopted by the trial court. Thus, absent an abuse of discretion, a reviewing court will not reverse the trial court's disposition. *In re Marriage of Shafer* (1984), 122 Ill. App. 3d 991, 994.

■ The trial court awarded the marital residence, with a median value of $109,750, to Tim with $45,000 of that amount as reimbursement. Tim was ordered to pay $41,925 to Paula for her equitable interest in the residence. The Scottsdale condominium, with a median value of $197,000, was ordered to be sold with $68,254 awarded to Tim as reimbursement. The balance after payment of the mortgage was to be split 65% to Paula, 35% to Tim.

Section 503(b) of the Act provides:

"For purposes of distribution of property pursuant to this Section, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage, including non-marital property transferred into some form of co-ownership between the spouses, is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section." (Ill. Rev. Stat. 1985, ch. 40, par. 503(b).)

One of the ways this presumption of marital property can be overcome is by showing that the property was acquired by gift, legacy or descent. Ill. Rev. Stat. 1985, ch. 40, par. 503(a)(1).

Section 503(c) states:

"Commingled marital and non-marital property shall be treated in the following manner, unless otherwise agreed by the spouses:

(1) When marital and non-marital property are commingled by contributing one estate of property into another resulting in a loss of identity of the contributed property, the classification of the contributed property is transmuted to the es-

tate receiving the contribution, subject to the provisions of paragraph (2) of this subsection; provided that if marital and non-marital property are commingled into newly acquired property resulting in a loss of identity of the contributing estates, the commingled property shall be deemed transmuted to marital property, subject to the provisions of paragraph (2) of this subsection.

(2) *When one estate of property makes a contribution to another estate of property,* or when a spouse contributes personal effort to non-marital property, *the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which* [1] is not retraceable by clear and convincing evidence, or [2] *was a gift,* or, [3] in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, par. 503(c).)

The respondent argues that the creation of marital joint tenancy property using nonmarital funds results in a gift to the marital estate absent clear and convincing evidence. In support, she cites *In re Marriage of Rodgers* (1981), 85 Ill. 2d 217. In *Rodgers*, the respondent husband inherited $65,000 in cash and securities. He traced this inheritance at trial into a marital home purchased in Colorado and through that transaction to the jointly owned residence of the parties. The respondent, like the petitioner in the instant case, sought credit for the nonmarital funds he had contributed. The court responded:

"It may be anachronistic now to refer to an intent to convey a gift to the other spouse, but it is not improper to refer to an intent to convey a gift to the marriage. Therefore a marital residence owned by both spouses, even if one spouse has furnished all the consideration for it out of non-marital funds, will be presumed 'in fact' as marital property absent convincing rebutting evidence." [Citation.] (85 Ill. 2d 217, 223.)

Thus, Paula argues that there is a presumption, as elucidated in *Rodgers* and as codified in section 503(c), that there is a gift to the marriage in the event that one spouse commingles nonmarital prop-

erty with marital property. She reasons that under section 503(c)(1) that when Tim commingled marital and nonmarital property in the acquisition of new property taken in joint tenancy there was a resulting loss of identity of the contributing estates. This purportedly activates the presumption of gift, which under section 503(c)(2) would require no reimbursement be made to the contributing estate. Respondent submits that this approach was followed in *In re Marriage of Nagle* (1985), 133 Ill. App. 3d 498. The *Nagle* case involved a husband who had used his inheritance to retire the mortgage on a marital home. When the Nagles traded up to a larger home, title was taken in joint tenancy. Mr. Nagle sought reimbursement for his nonmarital contribution. The *Nagle* court, citing section 503(c)(2) and *Rodgers*, analyzed the presumption of gift and distinguished it from the presumption of marital property and marital property of 503(b):

> "As applied to this case, the marital residence having been acquired after the marriage, is presumed marital property irrespective of how the title is held, until shown to have been acquired by one of the means excepted in Section 503(a)(1) through (8). *Section 503, as amended, does not, however, eliminate the presumption arising from the fact that title to the marital residence was taken in joint tenancy, i.e., that of gift to the marital estate.*" (133 Ill. App. 3d 498, 502-03.

In the case at bar, Paula argues that because the titles to both the Moline residence and the Scottsdale condominium were taken in joint tenancy, the same presumption must inevitably arise. Thus, she asserts the trial court erred in awarding reimbursement.

We agree. Section 503(c)(2) does not mandate reimbursement for property which was gifted to the marital estate. Under the language of section 503(b), the fact that the Moline residence and the Scottsdale condominium were acquired after the marriage raises a presumption of marital property. The same presumption arises with respect to the monies deposited in a joint account with the John Deere Credit Union. This presumption could have been rebutted by showing that the property was acquired by a method excepted in section 503(a) for nonmarital property. (Ill. Rev. Stat. 1985, ch. 40, pars. 503(a)(1) through (8).) In this case, Tim received as a gift a one-fourth interest in the Moline residence and inherited another one-fourth interest. The condominium was purchased with money Tim inherited from his mother. Part of the money in the joint account, $4,880, was deposited after Tim sold some of his inherited stock. Considering the above cited cases and the operation of section 503(c), Tim has not rebutted the presumption of marital property so as to be entitled to reimburse-

ment. The fact that the residence, condominium and account were taken in joint tenancy raised a presumption of gift to the marital estate. (*In re Marriage of Nagle* (1985), 133 Ill. App. 3d 498, 506.) The only evidence in the record which suggests why the real properties were placed into joint tenancy is Tim's testimony that it seemed like the thing to do. The record is thus devoid of any evidence to overcome the presumption of gift.

Alternatively, Tim argues that he should be entitled to reimbursement for his contribution of prudent financial stewardship. Because there is no evidence which indicates that this contribution equals the amount the trial court awarded to him and because petitioner did not overcome the presumption of gift, the trial court erred in awarding reimbursement.

■ Finally, the petitioner states it would be inequitable to deprive him of his inheritance without considering the potential inheritance of Paula.

Paula's mother is 80 years old and has named Paula as beneficiary under her will. "Appropriate here is the maxim *nemo est haeres viventis.*" (No one is the heir of a living person.) *In re Marriage of Stephenson* (1983), 121 Ill. App. 3d 698, 700.

■ The last issue which Paula claims as error, in regard to the court's award of marital and nonmarital property, is whether the court erred in reserving jurisdiction over the division of Tim's pension.

At the time of trial, Tim had certain pension entitlements which will vary according to when he retires and his future wages. Paula urges that the trial court erred in failing to award her an ascertainable present interest in Tim's pension. Under the reserved jurisdiction approach, the nature and extent of a party's interest in pension benefits is reserved for subsequent judgment by the trial court. Jurisdiction is retained until the pension becomes a realized asset. (*In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 476.) The trial court recognized that Paula has an apportionable interest in Tim's pension and reserved jurisdiction. The court's action did not contribute an abuse of discretion under *Fairchild.* 110 Ill. App. 3d 470, 476.

■ Next, the respondent argues the trial court abused its discretion by failing to award maintenance.

The awarding of maintenance is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless it amounts to an abuse of discretion or is against the manifest weight of the evidence. The trial court, in making a distribution of the marital property and the equity contained therein, ordered the distribution of

the equity in lieu of maintenance. A review of the record does not indicate the court's failure to award maintenance was an abuse of discretion or against the manifest weight of the evidence.

The respondent also contends that the trial court abused its discretion when it required Tim to pay Paula only 12½% of his net income in child support. Child support in this case was determined pursuant to the guidelines set forth in section 505 of the Marriage and Dissolution of Marriage Act. That section reads in relevant part:

> "The Court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| 1 | 20% |
| 2 | 25% |

(Ill. Rev. Stat. 1985, ch. 40, par. 505(1).) The trial court's rationale behind its award of 12½% of net income merits recitation.

> "Now, very briefly, my view is when you have a situation when children are split, the guidelines become a little bit ambiguous. ***
>
> So, I have two children which are requiring Tim's day-to-day support. So then the issue then becomes do you consider all the children that are the object of his support or just one that is not physically with him.
>
> The example becomes much more obvious for instance if there were six children here instead of two, one were away and five were still with Tim. Under [Paula's] reasoning he would still be entitled or have to pay twenty percent of net for one child while he still has five at home.
>
> What I did was take twenty-five percent for two children and split it. ***.
>
> There comes a point when an assignment of child support no longer supports the child in any standard of living but becomes nothing more than surplus money ***."

Given the petitioner's income, the trial court felt that its award would enable the child to maintain the standard of living the child would have enjoyed had the marriage not been dissolved. Under the court's award, Paula will receive $428 a month in child support. We are unable to conclude the trial court's award was an abuse of discretion.

The final issue on appeal is whether the court abused its discretion in not awarding attorney fees to Paula. In light of the property settlement ordered by the court below and the income potential of Paula, we do not find an abuse of discretion.

Accordingly, for the reasons given above, the judgment of the circuit court of Rock Island County is affirmed in part and reversed in part. Because no right of reimbursement exists, we remand for division in just proportions.

Affirmed in part and reversed in part and remanded.

BARRY and WOMBACHER, JJ., concur.