*In re* MARRIAGE OF JANE Z. SWANSON, Petitioner-Appellant, and ROBERT A. SWANSON, Respondent-Appellee.

Third District   No. 80-688

Opinion filed September 25, 1981.

STOUDER, J., dissenting.

Timothy J. Howard, of Kavanagh, Scully, Sudow, White & Frederick, P. C., of Peoria, for appellant.

Ronald C. Tenold, of Standard and Tenold, of Monmouth, for appellee.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

This cause involves the end of a marriage. Jane Swanson and Robert Swanson were married just shy of 30 years. As in many dissolution cases, the courts are asked to resolve the final, legal remnant of that union—the parties' property interests. This one presents those questions.

Jane Swanson, the petitioner, is 65 years old and in good health. Jane and Robert were married July 2, 1949. A college graduate, the petitioner works for the Illinois Medical Society as a secretary. She has held such position for almost 40 years. At times, her job has required her to work in Chicago during the week, from whence she returned to Monmouth on the weekend. During the course of their marriage, Mrs. Swanson did not engage in any tasks connected with the operation of her husband's farm.

She did, however, perform domestic duties such as meal preparation, laundry, and cleaning. Presently, she resides with her mother in Monmouth in Illinois. At the time of the hearing, her retirement plans were uncertain.

The respondent, Robert Swanson, is 57 years old, enjoying good health. Presently, he resides in Arkansas with another woman. He is a high school graduate. From 1945 to 1960 he worked a Warren County farm with his father. After working in a paint store, he started his own farm implements business in 1963. In 1969 he became a real estate salesman, and later a broker, his present occupation.

The parties accumulated a sizable estate which is comprised of marital as well as nonmarital property. The trial judge, in a meticulous, well-designed order, made the following disposition:

| Real Estate: | Value | Wife | Husband |
| --- | --- | --- | --- |
| Farm Acreage (197.9 acres) | $679,241.00 | $166,928.00 | $512,313.00 |
| Less: Mortgage (on 185.63 acres) | 65,297.00 | 15,560.36 | 49,736.99 |
| Total | 613,944.00 | 151,367.64 | 462,576.01 |
| Residential: | | | |
| E Street | 9,032.59 | 4,516.30 | 4,516.29 |
| Kirkwood | 9,945.59 | 4,972.99 | 4,973.00 |
| 3rd Street | 15,248.11 | 7,624.06 | 7,624.05 |
| Total Real Estate | 629,192.11 | 168,500.99 | 479,689.35 |
| Stock | 55,218.22 | 27,609.11 | 27,609.12 |
| Bonds, Notes | 36,300.00 | 18,150.00 | 18,150.00 |
| Cash | 84,185.31 | 42,092.66 | 42,092.65 |
| Personal Property | 18,000.00 | 9,000.00 | 9,000.00 |
| TOTAL | $841,873.88 | $265,332.76 | $576,541.12 |

Stocks, bonds, and personal property, valued at $26,394, amounted to Jane Swanson's nonmarital property. Robert Swanson's nonmarital estate was priced at $340,660.

Six parcels of land make up the farmland distributed between the parties. Because the division of this real property forms the primary disagreement between the parties, a short history of its acquisition is necessary.

In January 1947, Robert and his father, Nels Swanson, bought a 78.69-acre farm (tract I), as joint tenants. The purchase price, $21,800, was made by equal cash payments by both men, and a mortgage to the Federal Land Bank for $9,700. A 1.3-acre piece (tract II) was purchased outright as joint tenants by Nels and Robert in July 1953. 36.94 acres (tract

III) were purchased by Robert and his father in December 1954. To finance the purchase money, $3,000 cash was advanced, and a $19,000 mortgage obtained from the Federal Land Bank. Part of the mortgage money was used to pay off the existing debt on tract I. A new mortgage covering tracts I and III was executed. The elder Swanson, as well as Jane and Robert, all signed the note. Title, again in joint tenancy, was in the men's names. In August 1959, father and son, as joint tenants, purchased 8.27 acres (tract IV). A loan for the purchase price was obtained from a bank in Monmouth. Nels Swanson died in 1963. On January 5, 1967, Robert and Jane purchased a 70-acre farm in joint tenancy. To do so they borrowed $73,685 from the Federal Land Bank. A portion of this loan paid off the indebtedness on tract III. Payment of this new loan was secured by mortgages covering tracts I, III, and V. The final property, covering 2.7 acres (tract VI), was purchased by Robert, in his own name, in October 1976.

The trial judge concluded Robert Swanson's nonmarital property included all of tract I and undivided one-half interests in tracts II, III, IV, and VI (approximately 104 acres). The remaining land (94 acres) was then divided evenly between the parties as marital property.

On appeal Mrs. Swanson claims such distribution is erroneous for two reasons. Because she executed and incurred potential liability of the note financing the purchase of tract III, petitioner argues, she contributed to the purchase of tract I and therefore this land has become marital property to which she is entitled at least in part. Such a result is warranted, she contends, because the new loan used to purchase tract III paid off the prior mortgage on tract I. She makes a similar argument with respect to the loan to purchase tract V which extinguished the debt on tract III. Secondly, she says the division of the marital estate is inequitable.

■■ The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq*.) provides that a trial judge, when dividing a marital estate, classify its components as either marital or nonmarital property. He must then assign to each spouse his or her nonmarital property, and ultimately make an equitable distribution to the parties concerning their marital property. Section 503(b) of the Act says that all property acquired by either spouse after the marriage and before judgment of dissolution is presumed to be marital property. (Ill. Rev. Stat. 1977, ch. 40, par. 503(b).) This presumption is not impaired by the manner in which title to the property is held (*In re Marriage of Rodgers* (1981), 85 Ill. 2d 219). Nonetheless, the evidentiary impact of this presumption may be negated in light of those ways which the statute so provides. Ill. Rev. Stat. 1977, ch. 40, pars. 503(a)(1) through (6).

■■ The trial court found the disputed farmland to be the result of joint efforts of father and son. We agree. But neither the fact of a partnership

nor the additional purchases of farmland nullifies the presumption that such acreage is marital property. Whether such land was acquired with a view of enlarging the farming enterprise is irrelevant in originally characterizing it as marital property. Such acquisition or contribution of a party to the retention of a marital asset is only meaningful in the final equitable distribution of all marital property. Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1).

■■ By placing the farm acreage in a series of joint tenancy deeds with his son, Nels Swanson was thereby distributing his property by "gift, devise, bequest, or descent" (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(1)). The trial judge so found, and upon examination of the record, we do not believe such conclusion manifestly erroneous. It cannot be ignored that such a practice has, throughout the years, been a frequent technique of "devising" property. The father's dying intestate is consistent with such a plan. We recognize that creation of survivorship rights in a joint tenant is not technically a "devise" or a "bequest." Neither can we be oblivious to the intent of the parties when interests are created by deed (*Tindall v. Yeats* (1946), 392 Ill. 498) or the inheritance qualities a joint tenancy estate actually possesses. The succession of joint tenancy deeds reflects a testamentary disposition on the part of Nels Swanson. We believe the trial judge quite discerning in acknowledging this for what it plainly was, and interpreting the statute in a flexible manner. Accordingly, we affirm the division of the marital and nonmarital estates.

■■ Likewise, we are unpersuaded by petitioner's entreaties that her contributions to the purchase of the farm acreage altered the character of such property from nonmarital to marital property. This so-called "transmutation theory" has had a mixed reception in the Illinois appellate courts (compare *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, with *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672), and in any event, we deem it inapplicable in this cause. Tract I was purchased prior to the marriage by father and son as joint tenants. It is clearly nonmarital property. (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(6).) When the subsequent mortgage was negotiated on tract III, the fact Jane Swanson became potentially liable on the note securing the mortgage, by itself, does not change the earlier resolution that tract I is nonmarital in character. This is also true with respect to the identical argument petitioner advances concerning the mortgage securing payment for tract III. The record is barren of any evidence which shows that at the time either mortgage was executed that Robert or Nels Swanson intended to create a new estate in Jane Swanson or anyone else with respect to such farmland (*In re Marriage of Drennan* (1981), 93 Ill. App. 3d 903, 907, citing *Stark v. Stark* (Mo. App. 1976), 539 S.W.2d 779, 782). Therefore, no

error occurred in the division of the marital and nonmarital estates of either party.

The petitioner's second complaint concerns what she perceives as the trial judge's inequitable distribution of the marital estate (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)). This argument, although frequently advanced, is, as in most cases, without substance.

■■ A trial court's property distribution will be sustained unless in its disposition an abuse of discretion occurs. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 36-37.) In dividing the property in "just proportions," a trial judge is required to consider 10 statutory factors. In this cause, the trial court, in a deliberate, step-by-step fashion, did just that. Consideration was given to the petitioner's contributions as a homemaker, the addition of her salary, and her inactivity with respect to the operation of the farm properties. Her career, and continued employment, and her present and anticipated income were weighed with respect to whether an award of maintenance should be granted. In this respect, the trial judge made a thorough and proper property division. Merely because the parties did not receive equal shares of all the assets of the marriage does not make such distribution erroneous.

Finally, the petitioner urges that refusal to grant her a rehearing was an abuse of discretion. As part of her motion, she attached affidavits and deeds purporting to establish Mr. Swanson lied about the extent of his real estate holdings in Illinois and Arkansas. We believe the trial court's denial of this motion was wrong. Thus, corrective action is required.

The record shows, quite probably, that Mr. Swanson, during discovery, lied about 20 acres of land in Warren County which he owned with his mother as a tenant in common. Apparently, he succeeded to this interest when his father died intestate. The effect of this nondisclosure, however, would not change the property distribution, since such an interest descended to him by operation of law. Thus, it would be his nonmarital property. (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(1).) The same cannot be said, however, of the Arkansas deeds.

The hearing distributing the property was held October 3, 1979. Robert moved to Arkansas in November 1977. All the deeds were executed on land in Garland County, Arkansas. The first, dated January 30, 1978, indicated Robert Swanson as grantee. The other two, dated March 31, 1979, and December 15, 1979, named him as grantor. Throughout discovery and trial, Mr. Swanson claimed ownership in only the nine parcels of land the trial court eventually distributed.

■■ The new evidence is not so conclusive as to warrant a new trial. (*Kaster v. Wildermuth* (1969), 108 Ill. App. 2d 288.) If Mr. Swanson did own such property, it would be presumed to be marital property.

Although respondent challenges the diligence with which petitioner's counsel sought such proof, we do not feel that any such lack of care is sufficient to override the interests sought to be preserved by a rehearing. Since property interests cannot be divided properly if not ascertained, remanding this cause is necessary. Therefore, on remand, the trial court is instructed to hold an evidentiary hearing limited to the extent of respondent's property holdings in Arkansas. If required, a subsequent order disposing of such property shall be entered.

For the reasons stated, the judgment for dissolution of marriage is affirmed. The supplemental judgment for disposition of property is affirmed and this cause is remanded with directions.

Affirmed and remanded with directions.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I disagree in part with the conclusions of my colleagues. I agree the case should be remanded for further consideration of the circumstances surrounding the appellee's ownership of property previously undisclosed to the appellant. However, I would also remand this case for reconsideration of the division of property because I believe the trial court erred in classifying substantial portions of the farmlands as nonmarital property.

At the outset, I agree the decisions of our appellate courts are in hopeless disarray on the subject of whether nonmarital property changes its character when marital property is combined with it. Since some of these cases are presently pending before the Illinois Supreme Court, it is anticipated the conflicts may be in the process of resolution. The majority of the court in this case have followed that line of cases which hold that if property is initially nonmarital property it forever retains that characterization even though the property may be substantially increased in value by combination with marital property or income. Contrary to the majority, I believe that the enhancement or increase in value of nonmarital property by combination with marital property should change the character of the property to marital property.

Of course the Marriage and Dissolution of Marriage Act does not use the term "transmutation," nor indeed does the Act even by way of general principle offer much assistance or guidance. We are in an evolutionary phase of changing our traditional concepts of dividing property when a marriage has ended. We can say however that there is no estate or interest in property denoted marital or nonmarital. The old ways of owning property remain the same, and while we may speak loosely of the marital

estate or the nonmarital estate, we are not describing any special interest in property but only a manner or method of resolving disputes regarding the division of such property upon termination of a marriage. As is often the case, courts tend to adopt new ideas slowly and just as often tend to apply the new ideas as if no changes were made and old concepts continue with their viability unaltered.

Under the former law we were concerned with legal ownership and special equities. The present law focuses on the economic aspects of marriage as a shared enterprise, a mutual endeavor, a domestic partnership or an economic unit. In a very real sense the economic health and benefits resulting from the efforts of both ought to be considered as belonging to both in broad terms, and whether property should be regarded as derived for the benefit of the economic community and therefore marital property ought not depend on the financial contribution of each party but should be viewed as the joint benefit of combined effort.

I do not make these observations particularly in defense of any theory of property division but rather to suggest that our primary concern should be the economic benefits of the marriage which under the circumstances of cases such as this one are not necessarily related to matters of time of acquisition and title to real estate, but rather the inquiry should be directed toward the basis of the values at the time division is required. Where, as in this case, the operation of the farm was a part of the economic activity of the marriage unit and the farms were paid for substantially from marital income, it seems to me the farms should have the characteristics of marital property.