JAMES H. STACKE, as Ex'r of the Estate of George A. Bates, Deceased, Plaintiff-Appellant, v. MARY LUISE BATES, Defendant-Appellee.

Second District   No. 2—89—0960

Opinion filed July 20, 1990.

James J. Carroll, of Sidley & Austin, and Allegretti, Newitt, Witcoff & McAndrews, Ltd., both of Chicago, and Perry G. Callas, of Bishop, Callas & Wagner, of Crystal Lake (Robert M. Ward, of counsel), for appellant.

Stephen H. Katz and Julie DeLara, both of Stephen H. Katz, Ltd., of Waukegan, and Kelley & Associates, of Schaumburg (Jeffrey Lawrence, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, James Stacke, as executor of the estate of George Bates (Estate), appeals from several circuit court orders entered in favor of defendant, Mary Bates (Mary). The Estate contends that the court erred by: (1) awarding maintenance in gross after George Bates' death; (2) awarding a home to Mary; (3) awarding equitable maintenance during the pendency of this appeal; (4) awarding unidentified maintenance during the pendency of a prior appeal; and (5) denying the Estate's request that Mary submit to a medical examination. We reverse.

This case comes to this court for the third time and brings with it quite a checkered past. The facts have been set forth in this court's opinions in *In re Marriage of Bates* (1986), 141 Ill. App. 3d 566, and *In re Marriage of Bates* (1987), 163 Ill. App. 3d 893. We will provide

only those facts necessary for proper background and discussion of the issues presented.

George and Mary were married in January 1976. At that time, George was 71 years old and Mary 39. In April 1980 George filed a petition for dissolution of marriage. Mary filed a counterpetition for legal separation. In 1982 the court denied George's petition and in 1984 granted Mary's petition.

George was ordered to pay $10,000 per month in unallocated support. Additionally, George was ordered to make available a sum of up to $300,000 for a home in which Mary could reside. George was also required to provide $50,000 for furnishings and $18,000 for the purchase of a new car for Mary. George sold a Remington bronze statue which he had acquired prior to the marriage to raise the necessary funds to comply with the court's order. The statue was sold for $425,000, $300,000 of which George used to purchase a home for Mary in Inverness, Illinois. Title to the home was placed in a land trust, and the parties were the beneficial owners as tenants in common.

Both parties appealed from the court's order. On March 14, 1986, this court reversed the trial court and found that George's petition for dissolution of marriage should have been granted. We remanded the case and directed the trial court to "enter an immediate order of dissolution" and to "reconsider the issues of maintenance and attorney fees." *Bates*, 141 Ill. App. 3d at 575.

On September 30, 1986, and in accordance with this court's mandate, the trial court entered a judgment of dissolution and reserved all financial issues for a later hearing. On October 3, Mary filed a motion to vacate the September 30 judgment order. George died on December 18, prior to the hearings on the motion to vacate and the financial issues.

The Estate filed a motion to compel Mary to be examined by a physician. It argued that this examination was necessary to prepare for its case on the financial issues. The court denied the Estate's motion.

On March 5, 1987, the court granted Mary's motion to vacate the September 30, 1986, order of dissolution. The Estate appealed from this ruling. On October 22, 1987, while the second appeal was pending, the court entered an order directing the Estate to pay Mary $2,500 per month in unidentified support. The court did not specify its theory for such payments. The court did state that any payments made would be offset against any final award. The Estate has made these payments as ordered.

In December 1987, this court rendered its decision on the second appeal regarding the vacation of the order of dissolution. We again reversed the trial court and directed it "to immediately reinstate said judgment and conduct further proceedings on the issues of maintenance and attorney fees as directed in the previous opinion of this court." (*Bates*, 163 Ill. App. 3d at 900.) On June 27, 1988, the trial court reinstated its judgment of dissolution according to this court's mandate.

On October 31, 1988, the court conducted an evidentiary hearing on the remaining financial issues. The Estate presented evidence establishing that there was very little marital property. The marital estate was supported throughout its brief existence by the proceeds received from the liquidation of George's nonmarital estate. The Estate also presented evidence to establish that the funds used to purchase the home for Mary were acquired by selling George's nonmarital property. Mary also admitted this fact. Mary produced no evidence to refute the Estate's claim that there was no marital property. Instead, her evidence related to her poor health and her need for maintenance.

On August 31, the court announced its ruling on the property issues. The court found that there was little marital property and did not make a marital property distribution. Mary was awarded her nonmarital property, and the Estate was awarded George's nonmarital property. The court, finding that what is now section 510(c) (Pub. Act 85—1001, eff. July 1, 1988, renumbered section 510(b) to 510(c)) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 510(b)) did not apply to the situation at bar, awarded Mary maintenance in gross. This award consisted of the home in Inverness with a stipulated value of $400,000, the contents of the home, $1,700,000 in cash and the automobile previously purchased for Mary. The Estate appeals from this award.

On October 3, 1989, this court granted the Estate's motion to stay the payment of the maintenance in gross award pending appeal. Mary then petitioned the trial court for equitable maintenance pursuant to section 504(c) of the Act. On October 17, the trial court granted Mary's petition and directed the Estate to pay equitable maintenance of $12,000 within seven days and $6,000 per month thereafter pending appeal. On October 25, this court granted the Estate's motion for a stay of these equitable maintenance payments and directed the trial court to refrain from making any other maintenance awards.

Mary filed a petition for leave to appeal from this court's stay order in the supreme court. Mary also requested a supervisory order va-

cating the stay. The supreme court allowed the filing of the petition on January 31, 1990. The case has been argued and is under advisement.

■ The first issue is whether the court had the authority to enter an order awarding Mary maintenance in gross *after* George's death. In a dissolution proceeding the court has no general equitable powers and may only exercise authority pursuant to specific statutory grant. (*Mueller v. Mueller* (1977), 49 Ill. App. 3d 666, 670.) It is obvious that, in general, the court has the authority to award maintenance in gross. (See Ill. Rev. Stat. 1987, ch. 40, pars. 504(a), (b).) What is not so obvious is the court's authority to enter an award of maintenance in gross after George's death.

■ In *Cross v. Cross* (1955), 5 Ill. 2d 456, a divorce decree was entered expressly reserving for further determination the issues of alimony and property rights. Prior to determination of the issues regarding alimony and property rights, the husband died. The ex-wife sought, *inter alia*, alimony in gross. The trial court denied her request. The supreme court affirmed this decision, stating:

> "In all cases involving alimony installments there is that same risk that the intervening death of the ex-husband would prejudice the divorced wife in that she is deprived of her distributive share of his estate by virtue of the divorce, and at the same time her alimony payments would be terminated. Hence, there is little justification for applying a different rule in the circumstances of the instant case. Any interpretation that such alimony payments could be *authorized* *** *after the death of the ex-husband,* in the absence of such an express provision in the decree, would not only be contrary to established precedent in Illinois, but would be at variance with the avowed objective of alimony, which is to continue in a measure the obligation of support that exists only during the lifetime of the parties, and would be confusing this obligation with the matter of dividing the property of the parties. Hence, we cannot sustain appellant's argument that because the right to permanent alimony was reserved for future adjudication in the divorce decree, it could be awarded after the death of her ex-husband." (Emphasis added.) (*Cross,* 5 Ill. 2d at 463-64.)

This court has found that, while property issues do survive the death of a spouse, "[i]t is consistent with the underlying rationale of the act to allow a party to claim a fair share of the property while finding that maintenance is barred by the death of the other party." *In re Marriage of Garlinski* (1981), 99 Ill. App. 3d 107, 110. See also

*Howard v. Howard* (1977), 49 Ill. App. 3d 441, 444 ("The reservation of rights in the reconciliation filed in the circuit court did not entitle plaintiff to an award [of alimony] *after* the death of her husband"). (Emphasis in original.)

Mary alleges that section 510(c) of the Act in its amended form authorizes the court to award maintenance after the death of the payor spouse. The relevant portion of section 510(c) states:

> "*Modification and termination* of provisions for maintenance, support and property disposition
>
> * * *
>
> (c) Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay *future maintenance* is terminated upon the death of either party, or the remarriage of the party receiving maintenance * * *." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 40, par. 510(c).)

The Estate argues that this provision precludes the award of maintenance after a spouse's death absent some form of agreement between the parties. Mary argues that this provision does not preclude the award of maintenance after a spouse's death. She contends the phrase "or otherwise approved by the court" provides the court with the authority to order maintenance after a spouse has died. The trial court found that section 510(c) is inapplicable to the case at bar as it deals with termination of maintenance at death and not whether maintenance may be initially awarded after death.

■ We agree with the trial court that section 510(c) does not apply to this situation. Section 510 pertains only to modification and termination of maintenance awards. It is axiomatic that a court cannot modify or terminate an award if there is no award. Section 510 is premised on the fact that there is an existing award. Section 510 may authorize a court to enter an order during the lifetime of the payor spouse to continue an existing maintenance obligation after the death of the payor spouse, but it does not grant the court authority to enter, after the death of the payor spouse, an order granting maintenance. Additionally, section 510(c) deals with an obligation to pay *future* maintenance. In a case in which maintenance in gross is awarded there is no *future* obligation.

Mary contends that *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, requires this court to affirm the trial court's post-death award of maintenance. However, *Freeman* is distinguishable in one important respect: the payor spouse was *alive* at the time the court initially awarded maintenance, and the issue was the termination of that exist-

ing award. (*Freeman*, 106 Ill. 2d at 293.) Mary has not cited, nor has this court found, any case in which an initial maintenance award was affirmed when that award was made after the payor spouse's death. This is due to the fact that the basic rationale for maintenance applies only during the lifetime of the parties. See *Cross*, 5 Ill. 2d at 464.

■ As previously, set forth, a court may only exercise authority specifically granted by statute in a dissolution proceeding. (*Mueller*, 49 Ill. App. 3d at 670.) There is no statutory authority to enter an award of maintenance after the payor spouse has died. In fact, the Act requires the court to consider "the age and the physical and emotional condition of both parties" when awarding maintenance. (Ill. Rev. Stat. 1987, ch. 40, par. 504(b)(5).) We believe that the legislature's inclusion of these factors requires the conclusion that the legislature presumed that the parties would be alive at the time an initial award of maintenance is ordered.

■ As George died prior to the initial award of maintenance, we find that the court did not have the power to award maintenance. Therefore, the maintenance in gross award consisting of the home in Inverness, the contents thereof, $1,700,000 in cash and the automobile must be reversed.

■ Mary argues that the home in Inverness should be awarded to her as it is marital property. This is contrary to the court's finding, "[t]hat there is little marital property." The court did not award Mary the home as a distribution of marital property but as part of the maintenance in gross award. The court's finding that the Inverness home was not marital property is not against the manifest weight of the evidence. Mary admitted that a nonmarital asset was sold and the proceeds used to purchase the home. It is clear that property acquired in exchange for nonmarital property is designated as nonmarital. (Ill. Rev. Stat. 1987, ch. 40, par. 503(a)(2); *In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 777.) The court did not abuse its discretion in determining that the home was not a marital asset.

■ We now turn to the issue of whether George's death precludes the award of equitable maintenance. There is no reason to treat equitable maintenance awarded pursuant to section 504(c) of the Act any differently from maintenance awarded pursuant to section 504(a) of the Act. Since the court is without authority, *after* George's death, to award maintenance, it is without authority, *after* George's death, to award equitable maintenance pending appeal.

■ The Estate has asserted that the trial court erred in awarding unidentified support of $2,500 per month to Mary after it had vacated the bifurcated judgment of dissolution. The Estate has, however, as-

serted that it will waive this issue if this court reverses the mainte-
nance awards. Since this court has determined that the maintenance
awards must be reversed, we deem this issue to be waived.

The issue regarding whether the court erred in denying the Es-
tate's request to compel Mary to submit to a medical examination
need not be discussed due to our resolution of this case.

For the foregoing reasons, paragraph 2 of the September 21,
1989, circuit court order beginning with the phrase, "[t]he Estate of
George Bates shall pay to the Respondent," is reversed in its entirety.
All other findings and awards set forth in that order are affirmed.
Also, the circuit court order dated October 17, 1989, is reversed in its
entirety.

Affirmed in part; reversed in part.

UNVERZAGT, P.J., and DUNN, J., concur.