*In re* MARRIAGE OF DONNA WERRIES, Petitioner-Appellant and Cross-Appellee, and LARRY WERRIES, Respondent-Appellee and Cross-Appellant.

Fourth District   No. 4—92—0277

Argued March 24, 1993.—Opinion filed July 15, 1993.

Michael B. Metnick, Diana N. Cherry (argued), and Kathryn Saltmarsh, all of Metnick, Barewin, Wise & Cherry, of Springfield, for appellant.

Howard W. Feldman and Fredric Benson (argued), both of Feldman & Wasser, of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner Donna Werries appeals the judgment of dissolution of her marriage to respondent Larry Werries, challenging the distribution of the marital property and award of maintenance. Respondent cross-appeals.

On appeal, the issues raised by the parties are (1) whether any or all of respondent's partnership interest in a farm operation was a marital asset and, if not, whether the marital estate was entitled to reimbursement for contributions thereto; (2) assuming the marital estate did not include respondent's farm partnership interest and was not entitled to reimbursement therefrom, whether the distribution of marital property was inequitable; (3) whether the award of maintenance was an abuse of discretion; and (4) whether the trial court committed an abuse of discretion by ordering respondent to pay $12,000 of petitioner's attorney fees. We affirm.

The record in this case is substantial. A great deal of evidence and testimony was presented in the trial court. However, only those facts necessary to an understanding of this court's decision will be set forth, and relevant facts will be discussed in the analysis of the issues to which they are pertinent.

## I. General Background

The parties were married on July 2, 1967. The petition to dissolve the marriage was filed September 14, 1988. After grounds for dissolution were found to exist, a trial was conducted on the remaining issues on March 28, 29, and October 15 through 18, 1990. At the time the trial began, the children of the parties, Kristen and Neil, were 18 and 21 years of age, respectively. Respondent was director of intergovernmental affairs with the United States Department of Agriculture, having left a position as Director of the Illinois Department of Agriculture in 1989. Respondent became the Director of the Illinois Department of Agriculture in 1981. Petitioner was not employed outside the home.

## II. Farm Partnership

Petitioner challenges the property distribution for three reasons: (1) the farm partnership of Leland Werries and Sons, or the partnership assets acquired after the marriage, should have been determined to be marital property; or (2) there should have been reimbursement to the marital estate for contributions to the nonmarital farm operation; and (3) even if this court rejects her arguments (1) and (2), the property distribution was inequitable.

Defendant was assigned his entire interest in the farm partnership as nonmarital property. Because the determination of whether an asset is a marital asset rests largely in the determination of the credibility of the witnesses, on review the trial court's determination that an asset is nonmarital will be overturned only if that determination is against the manifest weight of the evidence. (*In re Marriage of Leisner* (1991), 219 Ill. App. 3d 752, 757, 579 N.E.2d 1091, 1094; *In re Marriage of Flory* (1988), 171 Ill. App. 3d 822, 826, 525 N.E.2d 1008, 1011.) The trial court's finding on the tracing of marital or nonmarital funds also will not be disturbed on review unless it is contrary to the manifest weight of the evidence. See *Stacke v. Bates* (1990), 200 Ill. App. 3d 85, 91, 557 N.E.2d 1305, 1309; *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 679, 402 N.E.2d 332, 338.

All the property of the parties to a marriage belongs to one of three estates, the estate of the husband, the estate of the wife, or the

marital estate. Property brought to the marriage by the husband belongs to him. Property brought to the marriage by the wife belongs to her. (Ill. Rev. Stat. 1991, ch. 40, par. 503(a)(6).) Property acquired during the marriage is presumed to be marital property unless clear and convincing evidence establishes otherwise. (*In re Marriage of Cecil* (1990), 202 Ill. App. 3d 783, 787, 560 N.E.2d 374, 376.) One exception to this presumption of marital property is property acquired by gift as set out in section 503(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 503(a)(1)). Property can be transferred between these estates, intentionally or unintentionally. Such transfers occur in two ways, gift or commingling. A husband (H) can, for example, make a gift of his nonmarital farm outright to his wife (W) or to the marital estate in some form of co-ownership. (Ill. Rev. Stat. 1991, ch. 40, par. 503(b).) If an asset is given to the marital estate, the characterization of the asset changes from nonmarital to marital property.

Commingling of assets can occur in two ways. First, one asset can be so intermingled with another as to lose its identity. This often occurs when cash is involved. H uses his personal savings account to buy the family station wagon after the kids are born. In this example, the cash loses its identity as a nonmarital asset. Second, assets from two different estates can be combined to acquire new property. H and W each sell nonmarital homes to buy a new home. The new home becomes marital property. (Feldman & Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification and Division Upon Dissolution of Marriage*, 72 Ill. B.J. 336 (1984).) While there is no right to reimbursement when a gift has been made, there is a right to reimbursement when assets have changed character by reason of commingling as long as the contributions between estates can be traced by clear and convincing evidence. (Ill. Rev. Stat. 1991, ch. 40, par. 503(c).) The determination of all issues regarding the credibility of the parties and their witnesses or the weight to give the evidence lies with the trier of fact. *In re Marriage of Nagel* (1985), 133 Ill. App. 3d 498, 502, 478 N.E.2d 1192, 1194.

Petitioner argues that because the business has experienced tremendous growth since the parties' marriage, it was error for the trial court to find the partnership or its assets to be nonmarital property. Section 503(a) of the Act sets forth the following additional exceptions to the presumption of marital property:

"(7) the increase in value of [nonmarital property], irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a

spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section; and

    (8) income from [nonmarital property] if the income is not attributable to the personal effort of a spouse." (Ill. Rev. Stat. 1991, ch. 40, pars. 503(a)(7), (a)(8).)

Section 503(c)(2) of the Act provides:

"When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).

The evidence is uncontroverted that respondent's entire 45% interest in the partnership was acquired in part prior to the marriage and in part as a result of a gift from his father. The interest in the partnership is clearly nonmarital property.

After obtaining a degree in agriculture from the University of Illinois in 1962, respondent farmed with his father, Leland Werries. In 1964, respondent and his father became partners. Respondent purchased a 50% interest in the farm operation with $25,000 he borrowed from Edith Fox. Respondent admitted that a significant portion of the loan from Fox was repaid subsequent to and with earnings from the marriage. There is no evidence of the balance due at the time of the parties' marriage or of the amount which was actually paid back after the marriage. In 1966, respondent's brother, John Werries, purchased a one-third interest in the partnership which then became known as Leland Werries and Sons. John purchased the interest for $30,000. In 1979, Leland gifted to Larry and John a portion of his interest such that each son owned 45% of the partnership and Leland retained only 10%. The partnership interest remained the same to the date of hearing in this case. The farm partnership, a hog-raising operation which owned no real estate, had a value of approximately $1.5 million at the time of the dissolution proceedings. The

partners were paid by allowing them to make draws against the partnership, subject to an "evening up" of the draws at the end of the year. However, after respondent became the Illinois Director of Agriculture in 1981, there was an agreement that John would be allowed to draw off the top, before any distributions, a salary equal to the government salary respondent was receiving.

Petitioner points to the repayment of the Fox loan as a basis for arguing that the portion of the partnership acquired prior to the marriage was really marital property. Petitioner relies on *In re Marriage of Ohrt* (1987), 154 Ill. App. 3d 738, 741-42, 507 N.E.2d 160, 163, which is clearly distinguishable because it involved the purchase of a marital home two months prior to the marriage and the mortgage was entirely paid with marital funds. Petitioner also cites *In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 527 N.E.2d 1351. In *Tatham*, the trial court determined a tractor purchased prior to marriage by one spouse was a marital asset. The loan on the tractor was paid for after the marriage and the court found there was commingling of assets. The tractor in *Tatham* was also purchased two months prior to the marriage, and there was no indication in that decision that any payments were made other than from marital assets. (*Tatham*, 173 Ill. App. 3d at 1090, 527 N.E.2d at 1361.) For these reasons, the *Tatham* case is also distinguishable.

■ In this case, the loan was taken out several years prior to the marriage and only a portion, albeit a significant portion, was paid back after the marriage. The clear result is that the partnership interest is nonmarital, as the trial court found. An order of reimbursement to the marital estate would be appropriate if there is clear and convincing evidence to establish the right to reimbursement. The burden of proof is on the party requesting reimbursement, however, and petitioner never established how much the marital estate contributed to the repayment of the loan from Fox.

Petitioner also argues that the farm equipment and hog-confinement buildings acquired by the partnership after the marriage are themselves marital property irrespective of whether the partnership interest is marital property. The two cases cited by respondent in support of this position are also distinguishable.

*In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 547-48, 418 N.E.2d 947, 955, determined that stores, although owned by several corporations, were substantially owned by the ex-husband and that stores acquired after the marriage were new and distinguishable from, and not improvements to, previously owned stores or the corporations or the business. The court in *Kennedy* (1) declined to treat all

stores, including those owned before the marriage, as marital; and (2) determined it was proper to award (a) all the shares of stocks in the stores to the ex-husband to avoid friction over the conduct of the business, and (b) a just proportion of the marital estate otherwise to the ex-wife. By contrast, in this case, there are no separable units, but one ongoing enterprise.

*In re Marriage of Perlmutter* (1992), 225 Ill. App. 3d 362, 375, 587 N.E.2d 609, 617, decided that assets acquired by an investment partnership were marital because those assets were "sufficiently separable and distinct from one another, and their acquisition clearly constitute[d] more than an 'increase in value' " in the partnership. Petitioner concedes, as *Perlmutter* notes, that increases in value of nonmarital property are nonmarital. But so is the income from the nonmarital asset if that income is not attributable to the personal efforts of the spouse. Since 1981, none of the income of the partnership in the case at bar can be attributed to the personal efforts of the respondent and none can ever be attributed to the personal efforts of petitioner, which the testimony established was minimal with regard to the farm operation.

■ In any event, there is a distinction between assets of an "investment" partnership and assets of a farm partnership where the farm equipment was purchased for the purpose of keeping the business operating. Without the equipment, a farm operation would not be viable. In *In re Marriage of Kamp* (1990), 199 Ill. App. 3d 1080, 1082-83, 557 N.E.2d 999, 1000-01, although the partnership continued to purchase farm equipment and increase the acreage farmed, the partnership interest acquired before the marriage retained its nonmarital classification in spite of a significant increase in value during the marriage.

At oral argument, the parties were asked to submit supplemental briefs to address this court's recent decision in *In re Marriage of Patrick* (1992), 233 Ill. App. 3d 561, 569-70, 599 N.E.2d 117, 122-23. That case involved a farm operation which was a sole proprietorship and determined that crops grown and equipment purchased after the marriage were marital property. To reach the same result in this case would require substantially undoing long-standing legal principles relating to partnerships.

A partnership, although not a separate legal entity, is a separate entity for the purpose of owning property. Under section 25 of the Uniform Partnership Act (Partnership Act), a partner's property rights in specific partnership property are restricted. (Ill. Rev. Stat. 1991, ch. 106½, par. 25 (now 805 ILCS 205/25 (West 1992)).) Section

25 of the Partnership Act indicates that a partner is a co-owner of specific partnership property as a tenant in partnership, but the partner has no rights to (1) possess specific partnership property for nonpartnership purposes without the consent of the other partners; (2) assign specific partnership property except in connection with the assignment of the rights of all the partners in the same property; or (3) attach or execute against specific partnership property except on a claim against the partnership, and when so attached, homestead and exemption laws do not apply to such property. There is no right to a surviving spouse's or child's award against specific partnership property. The legal principle that partners do not own any separate part of partnership property is a long-standing one. The partnership interest, which itself is personal property, consists of the partner's share of the profits and surplus. (*Swirsky v. Horwich* (1943), 382 Ill. 468, 469, 47 N.E.2d 452, 453.) This does not mean that, in every case, partnership interests will automatically receive different treatment from assets held by a sole proprietorship. Nonmarital, closely held corporations, partnerships, or individually owned businesses, including farm operations, can accumulate income and assets in a variety of ways resulting in a substantial increase to the nonmarital estate which should continue to be treated as nonmarital property. If this fact can be demonstrated by competent evidence, such as accurate bookkeeping and a segregation of business funds, a court is justified in finding that some or all of the increased value of the business is nonmarital. The issue is not the business' form. Rather, it is whether there has been an actual segregation of the nonmarital estate from the marital and whether adequate proof of the separation of business from personal assets is offered. In the case at bar, the evidence shows the separation of the nonmarital business from marital personal assets was maintained. Petitioner failed to prove by clear and convincing evidence that the marital estate had a right to reimbursement by tracing contributions made from the marital estate. (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).) In addition, during the marriage, the parties were adequately compensated for respondent's personal efforts with regard to the farm partnership. Therefore, we decline to apply the reasoning of *Patrick* to this case.

Petitioner also argues that there were contributions made to the partnership from the marital estate in many forms, including (1) respondent's personal efforts, (2) the use of farmland owned by the parties jointly with John and Ruth Werries to provide corn to feed the hogs, and (3) the use of the 295 acres jointly owned by the parties and John and Ruth Werries as collateral to borrow money to make en-

hancements to the farm operation. The potential liability of a spouse as a signor of a mortgage on one tract of land does not transmute to marital property another tract of land for which part of the money was used to pay off a preexisting mortgage thereon. *In re Marriage of Swanson* (1981), 100 Ill. App. 3d 824, 828, 427 N.E.2d 574, 577.

To be entitled to reimbursement, there must be a tracing of funds in Illinois. The cited case of *Pereira v. Pereira* (1909), 156 Cal. 1, 103 P. 488, does not lend support to petitioner's position. There the court decided the trial court erred by including the entire "gain" of a business as community property where there was no showing that all of the gain was due to defendant's efforts alone. The court held that there should have been an allowance provided for the probable contribution of capital to the income at least equal to the usual interest on a long-term investment. (*Pereira*, 156 Cal. at 7, 103 P. at 491.) It appears that petitioner proposes the use of such a formula instead of evidence which would trace the contributions from the marital estate. In Illinois, however, no contribution which is not traceable by clear and convincing evidence is reimbursable. (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).) No reimbursement is to be made for personal efforts unless the effort was significant and resulted in substantial appreciation of the nonmarital property. Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).

■ While there certainly was an interrelationship between the personally owned farmland and the partnership operation, this was a relationship which was mutually beneficial and not solely a contribution to the partnership. Corn grown on the land had a ready market. There were no fees to be paid such as trucking expenses or a deduction for moisture content. The partnership paid the average market price over the prior year. In return, the partnership received feed corn for the hogs. But the land also produced soybeans which were not sold to the partnership. While the land may not have been a great investment, the fact the parties decided to buy the land and sell the corn crop to the partnership does not change the partnership into marital property or result in a contribution to the nonmarital partnership interest which is reimbursable to the marital estate. The land was owned separate from the partnership and was kept separate, there being a landlord-tenant relationship.

Furthermore, it is pure speculation to suggest that the parties could or would have invested their money in an investment other than the land. There was no testimony that the parties ever considered any other investments. The parties decided to use marital assets to buy the land, however wise the investment decision. As for the loan for the hog-confinement building, the testimony was that the bank re-

quired the parties and John and Ruth Werries to take the loan personally, rather than the partnership, and use the land as collateral. Some of the borrowed funds were used for purposes other than the hog-confinement building, such as installing drainage tiles in the nonpartnership farmland. However, the portion of the loan used for this building was completely repaid by the partnership. No personal assets of the parties were expended on the hog-confinement building. In short, there was nothing to reimburse as no contribution was proved.

Finally, we get to the personal efforts of respondent which, since 1981, have been *de minimis*. The evidence is that whenever petitioner and respondent needed any funds, respondent could draw from the partnership subject to "evening up" the draw at the end of the year with the other partners. Substantial amounts were withdrawn, and the parties' disposable cash was testified to by accountant Jay Baxter.

■ In determining whether the marital estate is entitled to reimbursement from a nonmarital business for the contribution of personal efforts of a spouse, the court may inquire as to whether the spouse was reasonably compensated by the business for those efforts. If the spouse has already been reasonably compensated for the personal effort, no reimbursement is necessary. (*Perlmutter*, 225 Ill. App. 3d at 372, 587 N.E.2d at 615; *In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 855, 493 N.E.2d 1088, 1092.) Based on the evidence in this case, the trial court could reasonably have found that the appreciation in value of the partnership since 1981 was not due to the personal efforts of respondent and that, in any event, he had been reasonably compensated for his personal efforts.

The trial court indicated that there appeared to be reimbursable contributions which were not established by the evidence and which the trial court attempted to even up by the award of property and maintenance. There were three hog-confinement buildings built shortly after the marriage, and there was a substantial increase in the net worth of the partnership, suggesting retention of earnings for capital improvements. However, we agree with the trial court that the absence of clear and convincing evidence of traceable contributions from the marital estate to the nonmarital partnership interest precludes any reasonable attempt to order reimbursement to the marital estate.

In spite of the apparent substantial growth in value of the partnership, there is no specific evidence of the amount of earnings retained by the partnership. There is no detailed evidence that equipment purchased by the partnership and other expenditures made were unnecessary to maintain the ongoing operation at its current size, as

opposed to being designed to increase the size and value of the operation. "Retained earnings" are simply undistributed profits, and "profits" may simplistically be defined as net earnings after deduction of business expenses. (See Black's Law Dictionary 1183, 1090 (5th ed. 1979).) The trial court need not guess how much could have been distributed to the partners had they chosen to reduce the size of the hog operation as long as respondent, and therefore the marital estate, was reasonably compensated for his efforts. Petitioner did not present any evidence from which the trial court could determine that the compensation received by respondent was unreasonably low, or that compensation to other partners was unreasonably high. The findings that the partnership interest was nonmarital property and that no right to reimbursement of the marital estate was established by clear and convincing evidence are not against the manifest weight of the evidence.

### III. OTHER PROPERTY

The next issue is whether the distribution of marital property was inequitable even assuming the marital estate did not include respondent's farm partnership interest and was not entitled to reimbursement therefrom. In dividing property, each spouse is to receive his or her own nonmarital property. The trial court is to consider the 11 factors listed in section 503(d) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)) when dividing marital property. (*In re Marriage of Frazier* (1988), 164 Ill. App. 3d 207, 210, 517 N.E.2d 775, 777.) In the absence of an abuse of discretion, the division of marital property will not be disturbed on appeal. (*In re Marriage of Flemming* (1986), 143 Ill. App. 3d 592, 595, 493 N.E.2d 666, 668.) An abuse of discretion will be found only where no reasonable person would have distributed the property as did the trial court. (*In re Marriage of Mayzner* (1986), 144 Ill. App. 3d 645, 650, 494 N.E.2d 615, 618-19.) The distribution need not be equal, as long as it is equitable. (*In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 847, 551 N.E.2d 737, 741.)

> "The court should consider: the value of the nonmarital and marital property; the contribution of each party in acquiring property, including any homemaker contribution; the age, health, occupation, source of income, and employability of each party; and whether maintenance is also to be awarded. No specific findings are necessary." *Hart*, 194 Ill. App. 3d at 846-47, 551 N.E.2d at 741.

Where one party is substantially responsible for the creation of the debt and has a substantially greater capacity to earn money, it is not an abuse of discretion for the trial court to assign the overwhelm-

ing majority of debt to that party. (*In re Marriage of Ryan* (1985), 138 Ill. App. 3d 1077, 1081-82, 487 N.E.2d 61, 64-65.) Nor is the trial court required to award marital assets to a party in an amount equal to or in excess of the amount of marital liability assigned to that party. (See *In re Marriage of McCartney* (1983), 116 Ill. App. 3d 512, 516-17, 452 N.E.2d 114, 117.) One court has stated:

> "Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 503(c)) (Act) incorporates a partnership theory of marriage, and thus an order disposing of the parties' property should recognize and compensate each party for his or her contribution to the marriage. (*In re Marriage of Goforth* (1984), 121 Ill. App. 3d 673, 459 N.E.2d 1374.) An important objective to be reached by the trial court in entering such an order is to place the parties in a position from which they can begin anew, in addition to providing adequate support for the children. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.)" *In re Marriage of Calisoff* (1988), 176 Ill. App. 3d 721, 725-26, 531 N.E.2d 810, 814.

The marital assets which were distributed to petitioner were as follows: (1) household furnishings, appliances, personal effects and belongings in her possession or stored with Illinois Moving and Storage, and items of personal property located at the Leland Werries residence; (2) the parties' half interest in 60 acres northeast of Chapin, valued at $69,000; (3) the parties' half interest in a contract for deed for the Galva farm, worth $144,887, and the 1990 payment of $19,417 received by respondent and all interest accrued thereon since its receipt; (4) $100 of respondent's pension and interest accruing thereon from June 18, 1991, held in the Federal Employee's Retirement System; and (5) half of the 1990 marital crop, amounting to $11,424.75. The following marital assets were distributed to respondent: (1) all personal property currently in his possession; (2) half interest in 75 acres north of Concord, Illinois, and half interest in 160 acres northeast of Concord, with a total value of $270,250, and respondent was to bear any indebtedness on said real estate and hold petitioner harmless therefor; (3) Federal Land Bank stock, worth $20,000; (4) an Aid Association for Lutheran's Life Insurance policy worth $10,000; (5) United Trust stock worth $600; (6) his pension in State of Illinois retirement system, valued at $6,343; (7) all of the pension in the Federal Employees' Retirement System except the $100 plus interest awarded to petitioner, described as being a small amount; and (8) half of the 1990 marital crop amounting to $11,424.75. With regard to

marital liabilities, petitioner would pay the debt to her parents, totalling $11,449, all her own prescription bills unreimbursed by insurance, and $100 to Dr. Michael D. Kant. Respondent was delegated the following marital liabilities: (1) $119,602 debt to the Federal Land Bank; (2) $144,000 debt to the Chapin State Bank; (3) $7,845 debt to Illinois Moving and Storage; (4) $312 debt to Illinois Bell Telephone Company; (5) $35,000 debt to Leland Werries and Sons; (6) any and all other debts in his name; and (7) all medical and dental bills of petitioner except prescription bills and the $100 to Dr. Kant.

■■ The distribution of marital assets was not an abuse of discretion. Because of his interest in the partnership, it is fair that respondent be assigned a significantly greater part of the marital debt.

### IV. MAINTENANCE

Both parties challenge the maintenance award. Petitioner argues it should have been "permanent" and higher. Respondent argues that, although the trial court correctly determined the maintenance should not be "permanent," the award was set too high.

First of all, an award of maintenance is not permanent and may be modified upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1991, ch. 40, par. 510(a).) The general principles recited by this court in the decision of *In re Marriage of Mantei* (1991), 222 Ill. App. 3d 933, 938-41, 583 N.E.2d 1192, 1195-97, are applicable here as well. Section 504 of the Act sets out the factors to be considered by the court in determining whether maintenance is necessary and, if so, how much. (Ill. Rev. Stat. 1991, ch. 40, pars. 504(a), (b).) Not only must the trial court determine whether one party needs maintenance, but also whether the other party has the ability to pay. (*In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300.) Only if it finds that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs and is either unable to support herself through appropriate employment or is otherwise without sufficient income may the trial court issue a maintenance order. (Ill. Rev. Stat. 1991, ch. 40, par. 504(a).) The amount and duration of an appropriate maintenance award shall be "as the court deems just" after consideration of all relevant factors, including (1) the financial resources of the party seeking maintenance and her ability to meet her needs independently; (2) the time necessary to acquire sufficient education or training to enable her to find suitable employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age, physical and emotional condition of both parties; (6) the ability of the spouse from

whom maintenance is sought to meet his needs while yet meeting those of the recipient spouse; and (7) the tax consequences of the property division. (Ill. Rev. Stat. 1991, ch. 40, par. 504(b).) The propriety of a maintenance award, as well as the amount and duration thereof, are matters which lie within the discretion of the trial court, and we will not substitute our own judgment absent an abuse of that discretion, which occurs " 'only where no reasonable man would take the view adopted by the trial court.' " *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 916, 466 N.E.2d 925, 933, quoting *In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 508, 436 N.E.2d 228, 232.

Although an award may be for a definite time period, it should not be based on speculation as to the future conditions, but on circumstances disclosed by the evidence. (*In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 269, 511 N.E.2d 156, 166; *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 351, 461 N.E.2d 447, 456.) Where there is specific evidence regarding educational background, present educational pursuits, and income at the time of dissolution, there is sufficient evidence to set a specific period of time for maintenance. (*Wisniewski*, 107 Ill. App. 3d at 719, 437 N.E.2d at 1306-07.) In the event the spouse is employable at an income not overly disproportionate relative to the standard of living established during the marriage, maintenance for a limited period is appropriate. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 465, 426 N.E.2d 1087, 1096.) Conversely, where the spouse is not employable or is employable only at a low income as compared to the previous standard of living, maintenance for an indefinite period would be appropriate. There is an affirmative obligation on the party requesting maintenance to seek appropriate employment and to make a good-faith effort to become financially independent. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748.) When the primary complaint of the party seeking maintenance is that her life-style is not the same as it was, this court has pointed out that the resources of the parties dictate whether they can maintain their life-style after dissolution. See *Wade*, 158 Ill. App. 3d at 269, 511 N.E.2d at 166.

"In some failed marriages, the parties are fortunate enough to have resources adequate to satisfy both of their reasonable needs in full. The spouse seeking maintenance would therefore be awarded the whole difference between her resources and her reasonable needs. But the Simmonses, like most divorced couples, do not have enough to go around. Living apart costs most couples more than living together. The court is unable to pro-

vide both parties with the standard of living they enjoyed during marriage; one or both have to take a cut. The court must apportion the deficit." *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 661, 409 N.E.2d 321, 328.

In this case, the trial court's orders provided that commencing June 15, 1991, and on the 15th day of each month thereafter for 24 months, respondent shall pay $1,500 to petitioner as maintenance and, commencing on June 15, 1993, and on the 15th day of each month thereafter for 24 months, respondent shall pay $1,200 maintenance. Modification of maintenance may be had during the four-year period upon a showing of substantial change in circumstances and, during the fourth year, a review hearing may be scheduled at the request of either party to consider extending maintenance for a finite or indefinite period of time. "The duration of the extension, and the amount thereof, will largely depend upon Plaintiff's efforts at rehabilitation, her employment income, if any, and the financial circumstances of each party at that time." Judgment was entered in favor of petitioner for $5,503.90 as an arrearage in temporary maintenance, and this arrearage was to be paid at the rate of $250 per month. An additional relevant portion of the order concerned the educational expenses of Kristen. The responsibility for Kristen's college expenses was allocated so that respondent paid for 75%, petitioner paid for 15%, and Kristen was responsible for the remaining 10%. This allocation applied to direct college expenses including tuition, books, miscellaneous supplies, and room and board while she was a full-time college student. The balance of Kristen's living expenses, including clothing, car expenses, car insurance, maintenance costs during school holidays, and spending money would be Kristen's own responsibility and not that of either parent except on a voluntary basis. Any scholarship monies or college loans that Kristen obtained would be credited first to her share of responsibility for her direct college expenses, second to her parents' shares, *pro rata*, and last to her extra living expenses.

■ In the case at bar, the parties' marriage was of long duration. Petitioner, while licensed as a licensed practical nurse, testified she was physically unable to perform that work. Petitioner had no other training or recent job experience which could enhance her employability. For most of the marriage, she did not work outside the home. However, she was under a doctor's care and her physical condition may change and she may find a nursing position which does not require her to perform the physical tasks of which she complained, or some other type of employment. It was no abuse of discretion for the trial court to allow for the maintenance to be reviewable after four

years. This order did not, after all, automatically deny any further maintenance, although it required petitioner to affirmatively seek additional maintenance.

As for the amount of maintenance, respondent's argument that the petitioner was not entitled to an amount of this size is meritless, given the size of the respondent's partnership interest. The parties once owned a $155,000 house which they had to sell at a loss because they could not afford it. Other than that, they never owned or rented a residence. Up to July 1981, they lived in a house located on the farm owned by respondent's parents and paid no rent, although they did make some physical improvements to the property. From February 1984 to the date of separation, they lived in a home provided by the State to the Illinois Director of Agriculture. The partnership provided beef and pork and respondent took an advance in the form of a draw against his anticipated partnership income whenever the parties needed money. They apparently never saved any significant amount of money and their major investment was the 295 acres and the Galva farm. What money they got they apparently spent on clothing, furniture, entertainment and food, vacations, and the like. Clearly, on the assets of this marriage, after considering the liabilities, neither party could continue to maintain that standard of living. However, in light of the partnership interest in an ongoing and growing farm operation, respondent could afford to give petitioner $1,500 per month, even though she did get about half the marital assets and very little of the marital liability.

With regard to petitioner's argument that she did not get a large enough maintenance award, in the initial four years following the dissolution, petitioner is going to be getting half of the 1990 crop, two payments on the Galva farm, plus a substantial balloon payment when the contract is paid off, and the cash crop on the 60-acre farm. A party ought not be required to sell assets to maintain the standard of living attained during that marriage. (*In re Marriage of Holman* (1984), 122 Ill. App. 3d 1001, 1014, 462 N.E.2d 30, 38; *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1088, 412 N.E.2d 1336, 1344.) However, there does not appear to be a need for petitioner to sell assets to live as the parties did during the marriage. She has all the furniture and money to buy a house. Her obligation to contribute to Kristen is ended or ending shortly, and she does not have a substantial amount of debt to repay.

Petitioner argues she ought not be required to sell or impair capital assets to provide for her support. This is so only *if* respondent has sufficient income to meet both of their needs. (*In re Marriage of Tietz*

(1992), 238 Ill. App. 3d 965, 973, 605 N.E.2d 670, 676.) Although the members of this court might have set a higher amount of maintenance for a longer period of time, that is not our prerogative. The standard of review is not whether this court would have made the same award as did the trial court, but whether any reasonable trier of fact would have done so. The judgment provided maintenance for a fixed period of time, but petitioner is specifically permitted to request a review hearing. Therefore, we conclude that the trial court's award of maintenance was not an abuse of discretion.

## V. ATTORNEY FEES

Finally, respondent argues by cross-appeal that the trial court committed an abuse of discretion by ordering him to pay $12,000 of petitioner's attorney fees.

■ Petitioner testified at the October 15, 1990, hearing that she was unable to pay her attorney fees, which then amounted to $17,000. The trial court, after considering the financial resources of the parties, may order either spouse to pay the attorney fees necessarily incurred by the other spouse. Ill. Rev. Stat. 1991, ch. 40, par. 508(a).

> "An award of attorney fees is a matter within the sound discretion of the trial court, and its decision will not be disturbed on appeal, absent an abuse of discretion. (*In re Marriage of Stockton* (1988), 169 Ill. App. 3d 318, 523 N.E.2d 573.) Attorney fees are the primary responsibility of the person for whom the services are rendered. (*In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 483 N.E.2d 316.) A person seeking an award of fees must establish that he is unable to pay the fees and the other party is able to pay them. (*Stockton*, 169 Ill. App. 3d 318, 523 N.E.2d 573; *In re Marriage of Westcott* (1987), 163 Ill. App. 3d 168, 516 N.E.2d 566.) It is not necessary that the spouse seeking fees be destitute; it is sufficient that the payment would exhaust his estate or strip him of his means of support or undermine his economic stability. (*In re Marriage of Piccione* (1987), 158 Ill. App. 3d 955, 956, 511 N.E.2d 1157, 1158.) The court may properly consider that one party's conduct precipitated the proceedings. *In re Marriage of Cotton* (1984), 103 Ill. 2d 346, 469 N.E.2d 1077." (*In re Marriage of Ziemer* (1989), 189 Ill. App. 3d 966, 969, 546 N.E.2d 229, 230-31.)

This court also stated in *Mantei* that just as a party does not have to be destitute to receive an award of fees, neither does the opposing party have to be destitute to avoid paying attorney fees. (*Mantei*, 222

Ill. App. 3d at 941, 583 N.E.2d at 1198.) After considering the facts in this case, it is abundantly clear that the award of attorney fees was not an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.