**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240282-U

Order filed April 1, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| ADRIENNE BAILEY, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-24-0282 |
| and | ) | Circuit No. 21-D-2133 |
| | ) | |
| JOSEPH F. BAILEY, | ) | Honorable |
| | ) | Richard D. Felice, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Brennan and Justice Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The court erred by striking wife's dissipation claim. The court's determination that certain property was husband's nonmarital property was not against the manifest weight of the evidence.

¶ 2    Petitioner, Adrienne Bailey, appeals the court's judgment of dissolution. She argues that the court erred by striking her notice of intent to claim dissipation. Adrienne further argues that the court's determination that a property purchased by respondent, Joseph F. Bailey, was his nonmarital property was against the manifest weight of the evidence. She also argues that the

court abused its discretion in the distribution of marital property. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                                    I. BACKGROUND

¶ 4          Adrienne and Joseph were married on July 10, 2015. Adrienne and Joseph did not have any children together. Adrienne filed a petition for dissolution of marriage on November 17, 2021. Trial was scheduled for April 13, 2023, and discovery was set to close 30 days prior to trial on March 14, 2023. On April 4, 2023, Adrienne filed a notice of intent to claim dissipation. The notice listed over 200 transactions that Adrienne claimed were dissipation. For each transaction, Adrienne listed the date, the payee, the amount, and a category (such as entertainment or attorney fees). One transaction was from November 25, 2021. Adrienne claimed that on that date Joseph wrote a check to himself for $95,000 from a joint checking account and used the funds on himself. The vast majority of the transactions were from 2022 or 2023. Joseph filed an objection to the notice, arguing that although the notice was timely under the applicable statute, it did not comport with notions of fairness, partly because it was filed nine days prior to the start of trial and included over 200 transactions. He argued that all but 23 of the transactions occurred in 2022. Joseph further argued that by February 3, 2023, he had provided all of his account statements through December 31, 2022, and by February 27, 2023, he had provided all of his credit card statements through February 9, 2023. The court agreed that there were issues of fairness due to the timing of the dissipation notice and the number of transactions claimed to be dissipation. The court entered an order striking the notice of dissipation.

¶ 5          The matter proceeded to trial over several days spanning from April 13, 2023, to September 21, 2023. On April 13, the court heard limited testimony from Adrienne for the purpose of establishing jurisdiction and grounds for dissolution. The next substantive day of trial

2

was April 21, 2023, and on that day Adrienne called Joseph as an adverse witness. Joseph testified that he previously owned an interest in real estate in Florida. There were two parcels that he owned jointly with his sisters. One parcel was sold in December 2021 and the other in January or February 2022. Joseph received approximately $90,000 from the sale of the properties and he deposited that money into a Citibank account ending 210. Statements from the Citibank account ending 210 were admitted into evidence and, according to Joseph's testimony, showed a deposit of $90,905.08 in February 2022. Joseph testified that the deposit was the proceeds from the sale of the Florida properties. On cross-examination, Joseph clarified that he and his two sisters inherited the Florida properties when their mother passed away. Copies of the checks for the proceeds from the sale of the Florida properties, as well as the settlement statements for the sales of the properties, were admitted into evidence. In response to questioning from Adrienne's counsel regarding one of the settlement statements, Joseph admitted that the settlement statement identified him as the seller and did not include either of his sisters' names or a trust as sellers. Joseph testified that a will was produced in discovery. The will was one of Joseph's exhibits and the court clarified that it was a pour-over will for Mary A. Bailey. Joseph testified that his mother had a trust but that he did not have possession of the trust documents anymore. Joseph admitted there were no documents produced in discovery that specifically showed that he took title to the Florida properties by way of inheritance. In May 2022, Joseph purchased a home located on Garfield Avenue in Aurora, Illinois. He made a downpayment of approximately $85,000 paid from the Citibank account ending in 210 which he opened in February 2022. Joseph testified that he made $20,000 of improvements to the Garfield home.

¶ 6 Joseph admitted transferring $95,000 from a joint PNC account to a Citibank account ending 9267. Joseph testified that he deposited his income into the account ending 9267. Joseph

used a Chase United Mileage Plus credit card as his primary credit card and he used the account ending 9267 to pay that credit card's balances. Joseph admitted that he paid his attorney fees with the Chase credit card and had paid approximately $29,000 in fees prior to trial. He further admitted that he paid those credit card balances for the attorney fees from the account ending 9267. Joseph hosted a rehearsal dinner for his son at the Union League Club and believed he paid for it with the Chase credit card but was not sure. Joseph also paid for a trip to Geneva for his five children, their spouses and the wedding party. He spent more than $5800 and he partially paid for it with the Chase credit card which was then paid with the account ending 9267.

¶ 7    Adrienne also testified.  She did not provide any testimony regarding Joseph's purchase of the Garfield home or the sale of the Florida properties.

¶ 8    The court provided its oral findings and ruling and entered its written judgment of dissolution of marriage in November 2023. The court found that Joseph's testimony was truthful, detailed and credible in contrast to Adrienne's testimony which the court found to be inconsistent, vague and contradictory at times. The court noted that to the extent resolution of an issue turned on credibility, it found Joseph's testimony more consistent and credible. The court further noted Joseph's testimony regarding the sales of the Florida properties. The court found that Joseph's testimony established that he received one-third of the net proceeds of each of the Florida properties which amounted to $47,376.33 of the total $142,129 for one property and $43,528.75 of the total $130,586.24 for the other property. The court noted Joseph's testimony that he deposited these proceeds into the Citibank account ending 210 and that the total deposit of $90,905.08 was the exact total of the proceeds from the Florida properties. The court found that Joseph overcame the presumption of marital property and established by clear and

4

convincing evidence that the money deposited in the account ending 210 was acquired through inheritance.

¶ 9       As to the $95,000 that Joseph transferred from a joint PNC account to a Citibank account, the court found that both accounts were marital assets. It further found that Adrienne did not testify that the transfer was done without her prior knowledge or consent and she presented no evidence that the accounts were used by Joseph for any improper purpose or purpose unrelated to the marriage. The court stated that Adrienne's claim for dissipation had been barred by prior order and that any claim by Adrienne for a credit or offset for the transfer of the funds was unsupported by the evidence and governed by the court's ruling barring that dissipation claim. The court noted Adrienne had presented a notice of dissipation which the court struck at the start of trial. The court further noted that Adrienne attempted to raise the dissipation claims again during trial and the court again denied those claims. The written judgement was consistent with the court's oral rulings. The judgment found that Joseph's deposit into Citibank account ending 210 in February 2022 totaling approximately $90,000 was his nonmarital property that he received as an inheritance. The judgment further found that the inheritance was used to purchase the Garfield home and that the home was Joseph's nonmarital property. The judgment found that Joseph committed no dissipation. Adrienne was awarded maintenance. The judgment provided that each party was to pay their respective attorney fees without contribution from the other party. The court found that the Citibank account ending 9267 was marital property. The court essentially split the marital assets evenly between the parties.

¶ 10       Adrienne filed a motion to reconsider in which she challenged (1) the court's calculation of maintenance, (2) the court's findings regarding the value of certain bank accounts and the distribution thereof, (3) the court's failure to account for the attorney fees and costs each party

paid, and (4) the determination that the Garfield home was Joseph's nonmarital property. In regard to the court's distribution of the bank account funds, Adrienne challenged the court's failure to take into account Joseph's use of marital funds to pay his attorney fees and the failure to provide an offset for the $95,000 that Joseph transferred and used to pay his expenses. At the hearing on the motion, Adrienne argued that the trial testimony established that Joseph paid approximately $29,000 of attorney fees with marital funds and that the court should have considered that use of marital funds as a predistribution against his share of the marital estate. Joseph argued that although the statute provided that payments for attorney fees from marital funds are considered advances from the parties' marital estate, that is only if the court has not ordered otherwise and in this matter the court had ordered otherwise. The court found that it had ordered otherwise based on the circumstances of this case, including Joseph's claim that Adrienne had acted in bad faith during the litigation. The court stated that while it did not find her conduct to rise to the level of bad faith, it noted that Joseph's claim had some merit. The court made clear that it was aware, through the testimony and evidence at trial, of the nature of fees and the claims that were made. The court also made clear it considered the arguments in the motion to reconsider but saw no reason to change the ruling on attorney fees. The court denied the motion. Adrienne filed a notice of appeal which listed the order denying her motion to reconsider and the judgment for dissolution of marriage as the orders she was appealing.

¶ 11                                    II. ANALYSIS

¶ 12          Adrienne first argues that the court erred by striking her notice of intent to claim dissipation because the notice was timely. Joseph argues that Adrienne waived her right to challenge the trial court's dissipation ruling because she did not list the order striking the dissipation claim in her notice of appeal. He further contends that the court properly struck

6

Adrienne's notice of dissipation because it was untimely since it did not comport with notions of fairness.

¶ 13    As an initial matter, we conclude that Adrienne has not waived her right to challenge the trial court's dissipation ruling because that ruling was a step in the procedural progression leading to both the judgment of dissolution and the order denying reconsideration of the judgment. See *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979) ("[T]he unspecified judgment is reviewable if it is a 'step in the procedural progression leading' to the judgment specified in the notice of appeal.") (quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F. 2d 1252, 1254 (1977)).

¶ 14    Turning to the merits of Adrienne's arguments, we note that both parties set forth the standard of review for whether the dissipation notice complied with applicable law as *de novo*. We therefore apply that standard here. See *In re Marriage of Majewski*, 2023 IL App (2d) 220050-U, ¶ 65 (stating that "the distinct question of whether a notice of intent to claim dissipation complied with applicable law is reviewed *de novo*"). There is no dispute that Adrienne's notice of intent to claim dissipation was filed within the time limits provided by section 503(d)(2)(i) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(d)(2)(i) (West 2022)) as it was filed within 30 days of discovery closing. The only dispute is whether the court erred by determining that the notice, despite its timeliness under the statute, failed to comply with notions of fairness. See *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 76 (providing that a dissipation claim should be considered if it complies with the express requirements of the Act and comports with notions of fairness). As to fairness, courts look to whether the party against whom dissipation is alleged had sufficient notice to refute the claim. *Id.* ¶ 75.

7

¶ 15    We agree with Adrienne that the court erred by determining that the notice failed to comply with notions of fairness. Joseph's objection to the notice actually highlights that the timing of Adrienne's notice was not unfair to him. Specifically, Joseph's objection notes that Adrienne did not have a complete set of his financial statements until the very end of February 2023 and she filed her notice approximately one month after receiving all of the statements. Moreover, the trial spanned several days over a five-month period. Notably, Joseph was not called as a witness until April 21, 2023, which would have given him more time to prepare to defend against Adrienne's dissipation claims. Further, while there were numerous claims of dissipation, the claims were set forth with specificity, each one being linked to a specific transaction with a date provided, payee, and amount. As these were transactions made by Joseph, he would already likely be familiar with the transactions. Therefore, it is unclear why he would need additional time to meaningfully respond to or defend against these dissipation allegations. This is not an instance where dissipation is being claimed due to loss in value of property or something of that nature where discovery or even expert testimony may be required. Based on the foregoing, we cannot say Adrienne's notice of dissipation offended notions of fairness and thus, the court erred by striking it. We therefore reverse the order striking Adrienne's notice of intent to claim dissipation and remand this matter for further proceedings on Adrienne's dissipation claims. On remand, the court is to allow evidence regarding and consider the claims contained in Adrienne's notice of intent to claim dissipation.[1] This includes Adrienne's claim that Joseph transferred $95,000 from a PNC account to a Citibank account ending 9267 and

---

[1]We note that the court has already considered and ruled on the issue of whether Joseph's use of marital funds to pay his attorney fees should be considered an advance from the marital estate. The court made clear in its ruling on Adrienne's motion for reconsideration that it was aware that payment of attorney fees from marital funds should generally be considered an advance from the marital estate but that it had ordered otherwise, as allowed under the statute (see 750 ILCS 5/501(c-1)(2) (West 2022)). Adrienne also included Joseph's payment of attorney fees as part of her notice of intent to claim dissipation. As the court has already considered and ruled on this issue, it need not do so again when deciding Adrienne's dissipation claims on remand.

spent that money on his own bills and expenses. We note that although the court stated it would not consider the transfer and alleged use of the $95,000 because of its prior ruling striking Adrienne's dissipation claim, the court went on to comment that she presented no evidence that the accounts were used by Joseph for any improper purpose or purpose unrelated to the marriage, essentially ruling on the dissipation claim. We conclude that this ruling, which amounted to a wholesale rejection of Adrienne's dissipation claim, was against the manifest weight of the evidence. See *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 204 (2005) (providing that a determination as to whether dissipation occurred is reviewed under the manifest weight of the evidence standard). For example, Adrienne argues on appeal that some of those funds were used to pay for a portion of Joseph's son's wedding expenses and a vacation for Joseph's children and their spouses. Joseph's own testimony indicated he paid for such expenses with funds in the account ending 9267. See *id.* at 203 (providing that dissipation is "the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown"). We acknowledge that on appeal Adrienne did not raise this issue and argument in terms of seeking reversal of a dissipation ruling but rather in challenging the distribution of the marital estate and the court's failure to account for any predistribution of funds due to Joseph's transfer and use of the $95,000. However, we consider it in this context because the issues overlap and are intertwined. Also, the court's ruling was unclear as to whether it was intended to be a substantive ruling on the dissipation claim, despite that claim being stricken.

¶ 16    Next, Adrienne argues that the court's determination that the Garfield property was Joseph's nonmarital property is against the manifest weight of the evidence because he failed to trace the funds used to secure the purchase of the home by clear and convincing evidence.

9

Adrienne argues that although Joseph testified that the funds for the down payment came from the sale of property he acquired through inheritance, he failed to provide sufficient documentary evidence to trace the funds. Joseph argues that the court's decision is presumed correct because Adrienne failed to provide a complete record for review by failing to include the trial exhibits in the record on appeal. Joseph further argues that he established by clear and convincing evidence that the funds used to purchase the Garfield property came from an inheritance such that it was his nonmarital property.

¶ 17       "Because the determination of whether an asset is a marital asset rests largely in the determination of the credibility of the witnesses, on review the trial court's determination that an asset is nonmarital will be overturned only if that determination is against the manifest weight of the evidence." *In re Marriage of Werries*, 247 Ill. App. 3d 639, 641 (1993). The court's decision regarding the tracing of funds is also reviewed under the manifest weight of the evidence standard. *Id.* "A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on the evidence." *In re Marriage of James*, 2018 IL App (2d) 170627, ¶ 20. Property acquired after marriage and prior to dissolution is presumed to be marital. 750 ILCS 5/503(b)(1) (West 2022). This presumption can be overcome by showing through clear and convincing evidence that the property was acquired by gift, legacy, descent or acquired in exchange for such property. *Id.* § 503(a)(1), (b)(1). Clear and convincing evidence is defined "as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995). Testimony alone can be sufficient to meet the clear and convincing evidence standard regarding the tracing of funds. See *In re Marriage of Henke*, 313 Ill. App. 3d 159, 174 (2000) (finding wife's testimony

10

sufficient to trace contributions of marital property to nonmarital property by clear and convincing evidence); *James*, 2018 IL App (2d) 170627 at ¶ 32 (stating that "the absence of documentary evidence tracing funds to a nonmarital source does not *necessarily* preclude a party from rebutting the marital-property presumption"). (Emphasis in original.)

¶ 18    Here, the court found Joseph's testimony to be truthful, detailed, and credible and we defer to the circuit court's determinations of credibility. See *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 51 (stating that it is not the reviewing court's function to reweigh the evidence or assess witness credibility). Joseph's testimony was at least partially corroborated by exhibits admitted as evidence. Specifically, the court noted in its findings that Joseph had testified that he received one-third of the sales proceeds of each of two Florida properties he and his sisters inherited from their mother and that he had deposited those proceeds in the bank account ending 210. The court further noted that the deposit into that account was the exact total of the proceeds from the properties. Copies of the settlement statements, checks and bank statements were admitted into evidence as exhibits. Adrienne failed to include copies of these exhibits on appeal and we therefore presume that any findings by the court which relied on these exhibits were properly supported. See *e.g.*, *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."). Further, although not required of Adrienne, we note that she failed to present any evidence to contradict Joseph's evidence establishing that the money used to purchase the Garfield property came from his inheritance. In light of the court's finding that Joseph was credible, the partially corroborating documentary evidence, and the lack of any contradictory evidence, we cannot say that the court's determination that Joseph established by clear and convincing evidence that the Garfield property was his nonmarital property was against the manifest weight of the evidence.

11

Essentially, the court only had evidence supporting Joseph's position that he purchased the Garfield property with nonmarital funds and it found that evidence credible. Therefore, we cannot say that the opposite conclusion—that Joseph failed to establish by clear and convincing evidence that he purchased the Garfield property with nonmarital funds—was clearly apparent or that the court's findings were unreasonable, arbitrary, or not based on the evidence. See *James*, 2018 IL App (2d) 170627, ¶ 20.

¶ 19 Lastly, Adrienne argues that the court's distribution of the marital estate was against the manifest weight of the evidence. Adrienne also largely takes issue with the court's failure to make an adjustment in light of Joseph's withdrawal of $95,000 from a joint account and his subsequent use of those funds for his own benefit. However, we need not decide this issue, as Adrienne raised the issue of the $95,000 as part of her dissipation claim, which we have already determined must be addressed by the circuit court on remand. As the overall distribution may change on remand, it would be premature for this court to address the propriety of the current distribution.

¶ 20 III. CONCLUSION

¶ 21 The judgment of the circuit court of Du Page County is affirmed in part, reversed in part, and the matter remanded for further proceedings.

¶ 22 Affirmed in part and reversed in part.

¶ 23 Cause remanded.